## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FORMTECH INDUSTRIES, LLC | ) | Case No. 09-12964 (   ) |
| and FORMTECH INDUSTRIES | ) | Joint Administration Requested |
| HOLDINGS LLC,[1] | ) |  |
|  | ) |  |
| Debtors. | ) |  |

## DEBTORS' MOTION FOR ORDERS: (I)(A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS, (B) SCHEDULING THE AUCTION, (C) AUTHORIZING PAYMENT OF THE BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING THE DEPOSIT ESCROW AGREEMENT, (E) SCHEDULING THE SALE HEARING, (F) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES RELATED TO THE SALE, AND (G) APPROVING THE FORM OF THE AUCTION NOTICE; AND (II) (A) AUTHORIZING THE SALE OF SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING AND APPROVING PURCHASE AGREEMENT, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (D) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors" or "Sellers"),

hereby move (this "Sale and Bidding Procedures Motion") the Court, pursuant to sections

105(a), 363 and 365 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the

"Bankruptcy Code") and Rules 2002, 6003, 6004, 6006 and 9006 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of the Bidding Procedures Order (as

defined below) and the Sale Order (as defined below). The facts and circumstances supporting

this Motion are set forth in the Declaration of Charles W. Moore, Chief Financial Officer of the

Debtors, in support of first-day motions filed concurrently herewith (the "Moore Declaration")

---

[1]     The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers following in the parentheses): FormTech Industries Holdings, LLC (3828), FormTech Industries, LLC (4879). The mailing address for each of the Debtors is 2727 W. Fourteen Mile Rd., Royal Oak, MI 48073.

and incorporated herein by reference. In support of the Sale and Bidding Procedures Motion, the Debtors further represent as follows.

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue of these cases is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006 and 9014, and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## INTRODUCTION

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. No creditors' committee has been appointed in these cases by the Office of the United States Trustee (the "United States Trustee"). The Debtors are continuing in possession of their property pending a sale of substantially all of their assets under section 363 of the Bankruptcy Code at the Sale Hearing (as defined below), as requested herein. Concurrently with the filing hereof, the Debtors filed a motion seeking joint administration of their chapter 11 cases.

6. In accordance with Local Rule 6004-1(b)(iv), the Debtors make the following disclosures and provide the following information regarding the Sale (as defined below):

2

| Notable Provision | Location in Motion, Order or Agreement | Justification for Provision |
|---|---|---|
| Agreement with Management (LR 6004-1(b)(iv)(B)) | Section 4.01, ¶ f(i)(1) | No agreements with current management or other employees regarding employment |
| Closing and Other Deadlines (LR 6004-1(b)(iv)(E)) | Section 2.08 | Closing to take place at 10:00 a.m. prevailing Eastern time, one (1) business day after satisfaction or waiver of closing conditions |
| Good Faith Deposit (LR 6004-1(b)(iv)(F)) | Section 3.02 | $2.5 million to be held pursuant to terms of a Deposit Escrow Agreement |
| Record Retention (LR 6004-1(b)(iv)(J)) | Section 6.08 | Seller will have access to records as reasonably necessary at Seller's expense |
| Successor Liability Findings (LR 6004-1(b)(iv)(L)) Sale Free of Unexpired Leases (LR 6004-1(b)(iv)(M)) | Section 9.12 | Buyer shall have no successor liability |
| Credit Bidding Provisions (LR 6004-1(b)(iv)(N)) | Section 3.01 | Buyer shall credit bid pursuant to 11 U.S.C. § 363(k), $40 million of Sellers' Indebtedness under the Credit Agreement |
| Relief From Rule 6004-H (LR 6004-1(b)(iv)(O)) | Motion, ¶ 54 | Seeking waiver of Rule 6004 |

7.     In accordance with Local Rule 6004-1(c)(i), the Debtors make the following disclosures and provide the following information regarding the Bidding Procedures (as defined below):

| Notable Provision | Location in Bidding Procedures Order |
|---|---|
| Qualifications of Bidders (LR 6004-1(c)(i)(A)) | Paragraph D Paragraph 3 Addendum I – Section II |
| Qualified Bids (LR 6004-1(c)(i)(B)) | Paragraph D Paragraphs 3 and 4 Addendum I – Section IV |

| Bid Protections | Paragraphs D and F |
| (LR 6004-1(c)(i)(C)) | Paragraph 9 |

| Modification of Bid Procedures | Paragraph 3 |
| (LR 6004-1(c)(i)(D)) | Addendum I – Section V.H |

## BACKGROUND

8.     The Debtors constitute the leading manufacturer in the United States of precision

hot forgings for sale to the automotive equipment manufacturers ("OEMs") and Tier 1 suppliers

to the OEMs. The forgings produced by the Debtors go into most every automobile and truck

produced in the United States. Sample parts produced from the Debtors' forgings include gears

and shafts for transmissions and transfer cases, clutch housings, bearing races and wheel

spindles.

## RELIEF REQUESTED

9.     The Debtors are requesting, pursuant to sections 105, 363, and 365 of the

Bankruptcy Code and Bankruptcy Rules 2002, 6003, 6004, 6006, and 9006, entry of: (a) an order

(the "Bidding Procedures Order") substantially in the form attached hereto as **Exhibit A**

(i) setting the time, date, and place of a hearing (the "Sale Hearing") to consider the sale (the

"Sale") of substantially all of the Debtors' assets to the Purchaser (as defined below) or to the

qualified bidder with the highest or otherwise best bid at an auction (the "Auction") to be

conducted at a date to be determined by this Court; (ii) approving the Bidding Procedures (as

defined and described below) for the conduct of the Auction; (iii) approving the Break-Up Fee

and Expense Reimbursement (each as defined below); (iv) approving the Deposit Escrow

Agreement (as defined below); and (v) approving the Assumption and Assignment Procedures

(as defined below); and (b) an order substantially in the form attached hereto as **Exhibit B** (the

"Sale Order") approving (i) the Sale to either the purchaser under that certain Purchase

Agreement (the "Purchase Agreement") between HHI Funding, LLC (the "Purchaser") and the Debtors dated August 26, 2009, a copy of which is attached hereto as **Exhibit C**, or to the qualified bidder with the highest or otherwise best bid at the Auction (including, possibly, the Purchaser, the "High Bidder"), in either case free and clear of all liens, claims, encumbrances, and other interests other than permitted encumbrances and expressly assumed liabilities; and (ii) the assumption and assignment of executory contracts and unexpired leases identified in the Purchase Agreement or the purchase agreement of another High Bidder, pursuant to section 365 of the Bankruptcy Code.

10.     Consummation of the Sale in an expeditious manner is critical in these chapter 11 cases. The Debtors do not have the financial wherewithal to continue operations without additional financing. The Purchaser has agreed to provide debtor-in-possession financing, subject to approval of, among other things, certain of the relief requested herein. As set forth in the Debtors' motion seeking approval of debtor-in-possession financing, the Debtors do not believe that they will be able to secure alternate debtor-in-possession financing over the objection of their existing senior secured lenders.

11.     The prompt Sale to the Purchaser or another High Bidder will maximize the value of the Debtors' estates for the benefit of all of the Debtors' stakeholders and, accordingly, is in the best interests of the Debtors, their creditors, and their other economic stakeholders. Additionally, the Debtors' employees, customers and vendors need to know that going concern operations will continue. The Purchaser is a third party, not comprised of insiders of the Debtors, with no affiliation to the Debtors. The Purchaser is n strategic, industry buyer, with a proven track record of turning around distressed operating entities. The relief requested in this Sale and Bidding Procedures Motion should be granted.

## DESCRIPTION OF THE PROPOSED SALE AND BIDDING PROCEDURES

### A.    The Purchase Agreement

12.    Pursuant to the Purchase Agreement, for a purchase price that includes: (a) the satisfaction of a substantial portion or all of the Debtors' first lien, pre-petition secured debt pursuant to a credit bid of that debt; (b) the assumption of significant administrative liabilities in these chapter 11 cases; and (c) cash that will be paid free and clear of secured lender claims in order to accrue to the benefit of the Debtors' estates, the Purchaser has agreed to purchase substantially all of the Debtors' operating assets including, without limitation, inventory, accounts receivable, permits, intellectual property, machinery, equipment and personal property, all as more fully described in Section 2.02 of the Purchase Agreement. In addition, the Debtors will assume and assign to the Purchaser certain of the Debtors' executory contracts and unexpired leases related to other Purchased Assets (the "Assumed Contracts"). The Purchaser will assume, among other liabilities, all costs to cure the Assumed Contracts and certain administrative expenses of these chapter 11 cases, including expenses that arise under section 503(b)(9) of the Bankruptcy Code.

13.    Other than liabilities under Assumed Contracts arising after the closing and other liabilities specifically listed in the Purchase Agreement, the Purchaser is not assuming any of the Debtors' pre-closing liabilities, as more fully described in Section 2.02 of the Purchase Agreement.

14.    The Purchase Agreement provides bid protections to the Purchaser in the form of a Break-Up Fee (as defined in the Purchase Agreement) in the amount of $2,000,000 and Expense Reimbursement (as defined in the Purchase Agreement) up to $750,000 in the event the Purchaser is not the High Bidder at the Auction or the sale fails to close for other specified reasons not caused by the Purchaser's breach of the Purchase Agreement. The Debtors request

that the Court approve Sections 8.03, 8.04 and 8.05 of the Purchase Agreement, which sections govern the Break-Up Fee and the Expense Reimbursement.

15.     In connection with the Purchase Agreement, the Purchaser has made a good faith deposit of $2,500,000 and the Debtors and the Purchaser have executed a Deposit Escrow Agreement (as defined in the Purchase Agreement), a copy of which is attached hereto as **Exhibit D**. The Deposit Escrow Agreement sets forth the parameters under which an escrow agent will release a portion of the cash Purchase Price (as defined in the Purchase Agreement) to be paid to the Debtors under the Purchase Agreement. The Debtors request that the Court approve the Debtors' assumption of the Deposit Escrow Agreement, to the extent that the Deposit Escrow Agreement is an executory contract, in conjunction with the approval of the proposed Bidding Procedures (defined below).

## B.     The Proposed Bidding Procedures

16.     While the Debtors believe that the Purchase Agreement is fair and reasonable, the Debtors believe that the best interests of their estates are served by conducting a public Auction to identify the highest or otherwise best offer for their assets. Accordingly, the Debtors will seek approval of the Purchase Agreement with the Purchaser only in the event that the Auction does not yield an offer that is higher or otherwise better than the Purchase Agreement. To determine if a higher or otherwise better offer exists, the Debtors seek the Court's approval of the following bidding procedures (the "Bidding Procedures"), which also are attached as **Addendum 1** to the proposed Bidding Procedures Order.[2]

---

[2]     To the extent the description of the Bidding Procedures set forth herein differs from those set forth in Addendum 1 to the Bidding Procedures Order, the terms of Exhibit A to the Bidding Procedures Order shall control.

## BIDDING PROCEDURES

### I.   The Bidding Process

Set forth below is the general process to be employed by the Sellers with respect to the proposed Sale of their assets:

A.   Any person interested in making an offer to purchase the Debtors' assets shall comply with these procedures.

B.   Only Qualifying Bids (as defined below) shall be considered by the Debtors.

C.   If the Debtors do not receive another Qualifying Bid prior to the Bid Deadline (as defined below), then the Purchaser's offer to acquire the Purchased Assets under the Purchase Agreement shall constitute the highest or otherwise best Qualifying Bid (the "<u>High Bid</u>").

D.   If the Debtors receive another Qualifying Bid prior to the Bid Deadline, then the Debtors shall select a Qualifying Bid as the High Bid after the Debtors have conducted an Auction (as defined below) and considered, among other things, the total consideration to be received by their estates as well as other financial and contractual terms relevant to the proposed Sale, including those factors affecting the speed and certainty of consummating the proposed Sale.

E.   Upon failure to consummate the proposed Sale because of a breach on the part of the High Bidder after an order entered at the Sale Hearing, the Debtors shall be permitted to select the next highest or otherwise best bid to be the High Bid and to consummate such transaction without further order of the Bankruptcy Court.

F.   If the High Bidder fails to consummate the Sale, and such failure is the result of a breach by the High Bidder, such High Bidder's Good Faith Deposit shall be forfeited to the Sellers and, except to the extent provided in such bidders' marked agreement (or the Purchase Agreement), the Sellers specifically reserve the right to seek all available damages from such person.

G.   The Good Faith Deposits of all Qualified Bidders shall be retained by the Sellers and held in escrow in an interest bearing account and all Qualified Bids will remain open, notwithstanding Bankruptcy Court approval of a Sale pursuant to the terms of a High Bid by a Qualified Bidder, until the earlier of (1) the closing of the Sale of the Purchased Assets, and (2) the date that is 90 days after submission of the Qualified Bid to the Sellers (or such later date specified in the Qualified Bid) (the "<u>Return Date</u>").   On the Return Date, the Sellers shall return the Good Faith Deposits of all Qualified Bidders, except the High Bidder, with the accrued interest.

## II. Participation Requirements

A. Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the sale process, each person (a "Potential Bidder") shall deliver to the Debtors:

    1. an executed confidentiality agreement in form and substance satisfactory to the Debtors; and

    2. current audited and unaudited financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, current audited financial statements or other financial information of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure acceptable to the Debtors, demonstrating such Potential Bidder's ability to close the proposed transaction and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed and assigned.

B. A "Qualifying Bidder" is (1) the Purchaser and, if applicable, (2) a Potential Bidder that delivers the documents described in subparagraphs A(1) and A(2) above and that the Debtors determine is reasonably likely (based on the availability of financing, experience and other considerations) to submit a bona fide offer and to be able to consummate the proposed Sale if selected as the High Bidder. Two or more Potential Bidders may be deemed a Qualifying Bidder if such Potential Bidders, considered in the aggregate, otherwise meet the foregoing criteria.

C. The Debtors shall determine whether a Potential Bidder is a Qualifying Bidder and shall provide written notice of its determination to such Potential Bidder and to each then existing Qualifying Bidder.

## III. Due Diligence

Subject to the Debtors' receipt of an executed confidentiality agreement in form and substance satisfactory to them, the Debtors shall afford each Potential Bidder due diligence access to the Purchased Assets. The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined below).

## IV. Bid Deadline and Requirements

A. A "Qualifying Bid" is (1) the Purchaser's offer to acquire the Purchased Assets pursuant to the Purchase Agreement and, if applicable, (2) another Qualifying Bidder's offer to acquire the Purchased Assets if such offer was received prior to the Bid Deadline and if such offer included each of the following (collectively, a "Bid Package"):

i.       An executed copy of an asset purchase agreement (including schedules and exhibits, the "Qualifying Bidder Purchase Agreement"): (a) marked to reflect changes to the Purchase Agreement (b) irrevocable until the earlier of 30 days after the Auction or two business days after a proposed Sale is consummated (c) for the purchase of substantially all of the Purchased Assets, "as is, where is," in exchange for a cash purchase price that exceeds the Purchase Price (as such term is defined in the Purchase Agreement) by at least $3,000,000 (representing the Expense Reimbursement, Break-Up Fee plus a $250,000 initial bid increment, the "Minimum Cash Amount") and the assumption or otherwise equivalent value of at least the Assumed Liabilities (as such term is defined in the Purchase Agreement). Executed copies of two or more asset purchase agreements may be deemed a Qualifying Bidder Purchase Agreement if, considered in the aggregate, such asset purchase agreements otherwise meet the foregoing criteria.

ii.     A provision requiring payment of the Break-Up Fee and Expense Reimbursement directly to the Purchaser upon the Bankruptcy Court's approval of a High Bid at the Sale Hearing from an entity other than the Purchaser.

iii.    Financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtors to allow the Debtors to serve such information within one (1) business day after such receipt on counterparties to any executory contracts and unexpired leases being assumed and assigned in connection with the proposed transaction that have requested, in writing, such information.

iv.    A good faith cash deposit (the "Good Faith Deposit") in the amount of $3,000,000 in the form of a bank or certified check (or other form acceptable to the Debtors in their sole discretion) payable to such party as the Debtors may determine, which Good Faith Deposit shall be held in escrow pending its use in accordance with these Bidding Procedures or the Return Date.

v.     A written statement that the bid is not conditioned on (a) obtaining financing or other financing contingencies or (b) the outcome of unperformed due diligence by the bidder or any other contingencies.

B.  In order to be considered, Bid Packages must be received on or before 4:00 p.m., prevailing eastern time, on September 30, 2009 (the "Bid Deadline") and, except as may be instructed otherwise with respect to the Good Faith Deposit, should be delivered to: (i) FormTech Industries LLC., c/o Conway MacKenzie and Dunleavy, 303 W. Madison Street, Suite 1600, Chicago, IL 60606, Attn: A. Jeffrey Zappone, Chief Restructuring Officer; (ii)counsel to the Debtors, Strobl & Sharp, PC, 300 E. Long Lake Rd., Suite 200, Bloomfield Hills, MI 48304, Attn:

Lynn M. Brimer, Esquire.; (iii) co-counsel to the Debtors, Potter Anderson & Corroon LLP, Hercules Plaza, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801, Attn: Steven M. Yoder, Esquire; (iv) counsel for any committee appointed in these cases; (v) counsel for HHI Funding, LLC, Proskauer Rose LLP, Three First National Plaza, 70 West Madison, Suite 3800, Chicago IL 60602-4342, Attn: Mark K. Thomas, Esquire, Cole Schotz Meisel Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801, Attn: Norman L. Pernick, Esquire, and Jenner & Block LLP, 330 N. Walbash Ave., Chicago, IL 60611, Attn: Elisabeth Davidson, Esquire.

C.      The Debtors, upon receipt of each Bid Package, shall distribute a copy of such Bid Package by electronic mail to counsel for the Purchaser and counsel to any committee appointed under Section 1102 of the Bankruptcy Code.

D.      After the Bid Deadline, the Debtors shall determine which Qualifying Bid represents the then highest or otherwise best value to the Debtors (the "Initial Bid"). At least 24 hours prior to the Auction, the Debtors shall distribute copies of the Initial Bid to each Qualifying Bidder.

## V.      Auction

If the Debtors receive a Qualifying Bid other than that of the Purchaser, the Debtors will conduct an Auction. The Auction shall take place at the offices of Steven M. Yoder, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, DE 19801 on October 2, 2009 commencing at 11:00 a.m. prevailing eastern time. Subject to the "Reservation of Rights" set forth below, the Auction shall be governed by the following procedures:

A.      Only a Qualifying Bidder who has submitted a Qualifying Bid (including the Purchaser) shall be eligible to attend and participate at the Auction.

B.      Each Qualifying Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the proposed Sale.

C.      The Auction shall begin with the Initial Bid (which, as a Qualifying Bid, will provide for at least the Minimum Cash Amount) and proceed in minimum additional increments of $100,000.

D.      Each bid at the auction must meet each of the criteria of a Qualifying Bid, other than the requirement that it be received prior to the Bid Deadline.

E.      The amount of the Expense Reimbursement and Break-Up Fee may be added to and deemed a part of any bid of the Purchaser.

F.      All bids shall be placed on the record, which shall either be transcribed or videotaped, and each bidder shall be informed of the terms of the previous bid.

G.      The Auction shall continue until there is only one offer that the Debtors determine is the High Bid. In determining which Qualifying Bid to select as the High Bid,

the Debtors may consider, among other things, (1) the amount of the purchase price; (2) the form of consideration being offered; (3) the likelihood of the Qualifying Bidder's ability to close a transaction and the timing thereof; and (4) the net benefit to the Debtors' estates and their creditors. The Debtors shall present the High Bid to the Bankruptcy Court for approval at the Sale Hearing.

H.      The Debtors, in their reasonable discretion, may adopt rules for the Auction at or prior to the Auction that, in their reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bidding Procedures Order; provided, however, that the Debtors may not without the consent of the Purchaser modify (1) the dates set for the Bid Deadline, the Auction or the Sale Hearing; (2) the definition of "Minimum Cash Amount", or the requirements with respect to the Initial Bid in Section V, C; (3) Sections V(A) or V(E), or (4) the last sentence of Section V(G).

## VI.     Sale Hearing

The Sale Hearing shall take place in the courtroom of Honorable [___] in the United States Bankruptcy Court for the District of Delaware on [_____], 2009 at [___] prevailing eastern time. With the consent of the High Bidder, the Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing or otherwise. At such Sale Hearing, the Debtors shall present the High Bid to the Bankruptcy Court for approval.

## VII.    Reservation of Rights

In addition to their rights set forth in section V.H., the Debtors may, with the consent of the Purchaser, modify these Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the proposed Sale of their assets if in their reasonable judgment such modifications would be in the best interest of the Debtors' estates and promote an open and fair sale process, so long as such modifications and/or additional terms are consistent with the provisions of the Purchase Agreement.

## C.      The Proposed Assumption and Assignment Procedures

17.     To facilitate and effect the Sale of the Debtors' assets to the Purchaser, and likely any other High Bidder, the Debtors seek authorization to assume and assign certain contracts and unexpired leases in connection with the Sale. The Purchaser has identified contracts and leases of which it requires assignment as part of the Purchase Agreement and it is likely that any other High Bidder also will require the Debtors to assume and assign to it certain executory contracts and unexpired leases in order to continue the going-concern operations of the Debtors' business enterprise. In order to provide counterparties with adequate notice of such assumption and

proposed adequate cure amounts (the "Cure Amounts"), the Debtors and/or the High Bidder propose the following procedures (the "Assumption & Assignment Procedures"), which also are attached as **Addendum 2** to the proposed Bidding Procedures Order:

A. Within three business days of approval of the Assumption & Assignment Procedures, the Debtors shall file a schedule of cure obligations (the "Contract & Cure Schedule") listing the Assumed Contracts and the amount, if any, that the Debtors propose to pay to cure such Assumed Contracts pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts").

B. Upon filing the Contract & Cure Schedule, a copy of the Contract & Cure Schedule, the Sale and Bidding Procedures Motion and all exhibits related thereto, the Auction Notice, the Bidding Procedures Order, the Bidding Procedures and the Assumption & Assignment Procedures (collectively, a "Cure Package"), will be served on each of the counterparties to the Assumed Contracts listed on the Contract & Cure Schedule.

C. Any objections ("Assignment Objections") to the assumption and assignment of any Assumed Contract, including, but not limited to, objections relating to adequate assurance of future performance or to the proposed cure amount set forth in the Contract & Cure Schedule, must be filed with the Bankruptcy Court and served upon the Notice Parties no later than: (1) 4 days prior to Sale Hearing; and (2) in the case of Additional Contracts (as defined below), ten (10) days after receipt of a Cure Package (as applicable, the "Assignment Objection Deadline").

D. Any counterparty to an Assumed Contract failing to file an Assignment Objection by the Assignment Objection Deadline shall be forever barred from (1) objecting to the Cure Amount set forth on the Contract & Cure Schedule with respect to its Assumed Contract; (2) seeking additional amounts arising under its Assumed Contract prior to the Closing from the Debtors, the Purchaser or other High Bidder; and (3) objecting to the assumption and assignment of its Assumed Contract to the Purchaser or other High Bidder.

E. The Bankruptcy Court shall hear and resolve Assignment Objections not consensually resolved no later than sixty (60) days after the closing of the Sale, with any related Cure Amounts or adequate assurance of future performance being fixed by the Bankruptcy Court.

F. Except as may otherwise be agreed to by all parties to an Assumed Contract, the cure of any defaults under Assumed Contracts necessary to permit assumption and assignment thereof in accordance with section 365 of the Bankruptcy Code shall be by (1) payment of the undisputed Cure Amount, and/ or (2) establishment of a reserve with respect to any disputed Cure Amount. The party responsible for paying Cure Amounts shall be as set forth in the Purchase Agreement or, if applicable, in an agreement between the High Bidder and the Seller.

G. The Purchase Agreement provides, and the agreement from another bidder may also provide, for the High Bidder to add Assumed Contracts to or remove Assumed Contracts from the Contract & Cure Schedule at any time up until thirty (30) days after the closing of the Sale. As the Debtors are advised by the High Bidder that they desire to assume and assign an executory contract or unexpired lease, the Debtors shall file an amended or supplemental Contract & Cure Schedule adding or removing such contracts or leases thereto (any such added contract, an "<u>Additional Contract</u>"), and shall provide notice of the proposed removal of an Assumed Contracts or assumption and assignment of the Additional Contracts to each affected counterparty to such Additional Contracts.

18. The Debtors believe that the proposed Assumption & Assignment Procedures will provide the counterparties to the Assumed Contracts a full and fair opportunity to be heard with respect to issues concerning the proposed assumption and assignment of the Assumed Contracts, whether to the Purchaser or another High Bidder.

## LEGAL ARGUMENT

### A. This Court Has The Authority To Approve The Bidding Procedures

19. Courts have indicated that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that overbid procedures and break-up fee arrangements that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.,* 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

20. Here, the proposed Bidding Procedures are reasonable, appropriate, and an exercise of the Debtors' proper business judgment under the circumstances, because they will serve to maximize the value of the Debtors' estates by expediting a going concern sale process, which expedited process is necessary to avoid value diminution.

14

### B. The Bidding Procedures Are Appropriate

21. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand); *Integrated Res.*, 147 B.R. at 659 ("It is a well-established principle of bankruptcy law that the . . . debtor's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") *quoting Cello Bay Co. v. Champion Int'l Corn. (In re Atlanta Packaging Prod., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

22. To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales. *See, e.g., Integrated Res.*, 147 B.R. at 659 (such procedures "encourage bidding and maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estate").

23. The Debtors believe that the Bidding Procedures establish the parameters under which the value of the Debtors' assets may be maximized at the Auction and ensuing Sale Hearing. Such procedures unquestionably will increase the likelihood that the Debtors will receive the greatest possible consideration for such assets because they will ensure a competitive and fair bidding process, that will proceed at a pace designed to avoid diminution in value of the estate.

## C. The Initial And Subsequent Overbids Are Appropriate

24.     One important component of the Bidding Procedures is the "overbid" provision, pursuant to which any initial offer for the Purchased Assets must be in an amount of at least $250,000 more than the Purchase Price offered by the Purchaser; plus the amount of the Break-up Fee and Expense Reimbursement. Accordingly, there is an initial overbid for the Assets of less than 10%. Indeed, a minimum initial overbid is necessary not only to compensate the Debtors for the risk that they assume in foregoing a known, willing, and able purchaser for a new potential acquirer, but also to ensure that there is an increase in the net proceeds received by the estates, after deducting the Break-Up Fee and Expense Reimbursement to be paid to the Purchaser in the event of a prevailing overbid. Case law also supports minimum overbids that are up to 10% of the initial purchase price as fair and reasonable. As the court stated in *In re Wintex, Inc.*, 158 B.R. 540 (D. Mass. 1992):

> A debtor may avoid the increased costs and complexity associated with considering additional bids unless the additional bids are high enough to justify their pursuit. The 10% increase requirement is one example of a reasonable litmus test.

*Id.* at 543. *See e.g., Fin. News Network,* 126 B.R. 152, 154 (S.D.N.Y. 1991) (requiring minimum overbids to exceed purchaser's offer of $105 million by at least $10 million (9.5%)); *In re Colony Hill Assoc.*, 111 F.3d 269 (2d Cir. 1997) (requiring minimum overbids to exceed purchaser's initial offer of $7.5 million by at least $650,000 (8.6%)); *In re Tempo Tech. Corp.*, 202 B.R. 363, 369 (D. Del. 1996) (requiring minimum overbids of $1.4 million in cash where original purchase price was $150,000 cash plus $3 million in stock of the purchaser and $500,000 of assumed liabilities).

25.     Here, the initial overbid amount is less than 10% of the Purchaser's purchase price; thus, such amount is more than reasonable under the circumstances.

**D.     The Break-Up Fee And Expense Reimbursement Are Appropriate**

26.     In order to compensate the Purchaser for the time, effort, expense, and risk that it has incurred and will incur in negotiating, documenting, and seeking to consummate the Sale under the Purchase Agreement, as set forth above, the Bidding Procedures provide that if the Purchaser is not the High Bidder, the Purchaser will be entitled to a Break-Up Fee of $2,000,000 and Expense Reimbursement of $750,000 (collectively the "Bid Protections"). Accordingly, the maximum aggregate of the Bid Protections equals just over [5%] of the Purchaser's purchase price. Approval of the Bidding Procedures, including the Bid Protections, is a condition to the Purchaser going forward with the Sale under the Purchase Agreement.

27.     Bid Protections are a normal and, in many cases, necessary component of significant sales conducted under section 363 of the Bankruptcy Code:

> Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the... corporation ha(s) a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize values.

*Integrated Res.*, 147 B.R. at 659-60 (emphasis in original). Specifically, "breakup fees and other strategies may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *995 Fifth Ave.*, 96 B.R. at 28 (quotations omitted); *see also Integrated Res.*, 147 B.R. at 660-61 (break-up fees can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In re Hupp Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("without such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence"). For these reasons, sellers of assets often employ termination or break-up fee and other bidding protections in order to encourage the making of bids. *See In re S.N.A. Nut Co.*, 186 B.R. 98, 101

(Bankr. N.D. Ill. 1995).

28.     Approval of the Break-Up Fee is governed by standards for determining the appropriateness of bidding incentives in the bankruptcy context established by the Third Circuit in *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527 (3d Cir. 1999). In *O'Brien*, the Third Circuit concluded that "the determination whether break-up fees or expenses are allowable under § 503(b) must be made in reference to general administrative expense jurisprudence. In other words, the allowability of break-up fees . . . depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *O'Brien*, 181 F.3d at 535.

29.     The *O'Brien* court identified at least two instances in which bidding incentives may benefit the estate. First, a break-up fee or expense reimbursement may be necessary to preserve the value of the estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *Id.* at 537. Second, "[i]f the availability of break-up fees and expenses were to induce a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth." *Id.*

30.     The proposed Bid Protections are appropriate under the "administrative expense" standard of *O'Brien*. The Bid Protections are fair and reasonable in amount. Moreover, the Bid Protections will enable the Debtors to secure an adequate floor for the Auction and, thus, insist that competing bids be materially higher or otherwise better than the Purchaser's initial bid, a clear benefit to the Debtors' estates. And the "floor", in the case of the Purchaser's bid, includes

payment of Chapter 11 administrative expense claims as well as a cash payment to the estate free and clear of claims of secured creditors.

31.     In sum, the Debtors' ability to offer the Bid Protections enables them to ensure the sale of the Debtors' assets to a contractually-bound bidder at a price that they believe to be fair while, at the same time, providing them with the potential of even greater benefit to the estates.    Additionally, having a committed, firm purchaser, with a proven track record in the industry and with distressed purchases, provides true value to the business by virtue of the positive effect that such bid will have on employees, vendors and customers. Thus, the proposed Break Up Fee is reasonable and appropriate under the circumstances and the Bid Protections should be approved.

**E.     The Auction, Hearing And Notice Procedures Are Appropriate**

32.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with twenty (20) days' notice of the Sale Hearing.    Pursuant to Bankruptcy Rule 2002(c), the Debtors are required to notify their creditors of the proposed sale of the Debtors' assets, including a disclosure of the time and place of the sale hearing, the terms and conditions of the sale, and the deadline for filing any objections.

33.     The Debtors wish to proceed to the Auction and Sale Hearing as expeditiously as applicable law and the Court's calendar will allow, but still will give the requisite notice of the Sale.

34.     The Debtors propose that within two days following entry of the Bidding Procedures Order, the Debtors will distribute a Notice of Bid Deadline, Auction, and Sale Hearing in Connection With the Sale of Certain of the Debtors' Assets (the "Auction Notice"), a copy of which is attached to the Bidding Procedures Order as **Addendum 3**, to: (a) counsel to

any committee appointed under section 1102 of the Bankruptcy Code; (b) the Office of the United States Trustee; (c) counsel to the Debtors' known secured creditors; (d) those parties that request notice of all pleadings in the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 2002; (e) counsel to the Purchaser; (f) any known prospective bidders at the Auction, including, but not limited to, those parties that previously executed confidentiality agreements regarding the potential purchase of the Debtors' assets; and (g) via first class mail, all of the Debtors' known creditors. The Auction Notice will provide recipients with instructions to obtain copies of the this Sale and Bidding Procedures Motion, exhibits to this Sale and Bidding Procedures Motion, the Bidding Procedures Order, and addendums to the Bidding Procedures Order.

35.     Further, if the Bankruptcy Court believes it is appropriate, the Debtors will publish an abbreviated version of the Auction Notice at least once in the national edition of The Wall Street Journal at least ten (10) days prior to the Auction. The Debtors contend that such notice of the Auction is good and sufficient notice and that no other or further notice is required.

36.     The Debtors propose that, to be considered, objections to the Sale must be in writing, filed with the Court, and served so as to be received no later than 5:00 p.m. Eastern Time on September 30, 2009.

### F.     The Sale Of The Debtors' Assets To The High Bidder Should be Approved

37.     Ample authority exists for this Court to approve a Sale to the High Bidder. Section 363 of the Bankruptcy Code provides, in relevant part, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts have required that it be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge

reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders* v. *Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same). Moreover, Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."

38.     The Auction will be well-publicized and conducted in accordance to procedures approved by this Court. Moreover, under the circumstances, the Sale to the High Bidder will maximize the value of the Debtors' assets for the benefit of all of the Debtors' creditors and economic stakeholders.

39.     To sell their property under section 363(b) of the Bankruptcy Code, the Debtors must demonstrate to the Court a "good business reason" for the Auction and Sale. *See Licensing by Paolo, Inc.* v. *Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d. Cir 1997) ("A sale of a substantial part of a [c]hapter 11 estate other than in the ordinary course of business may be conducted if a good business reason exists to support it."); *Comm. of Equity Sec. Holders* v. *Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (in considering a sale outside a plan of reorganization, a judge must not be shackled with unnecessarily rigid rules when exercising the broad administrative power granted him under the Bankruptcy Code, but must simply find "a good business reason" supporting the sale ); *In re Global Crossing, Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003).     As other courts have stated, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants* v. *Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).     When a valid business justification exists, the law vests the

debtor's decision to use property out of the ordinary course of business with a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Integrated Res., Inc.*, 147 B.R. at 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858,872 (Del. 1985)). As stated above, the Debtors do not have the financial wherewithal to continue in business, have been unable to secure additional financing, and have no option other than to maximize the value of their assets for the benefit of their creditors and other parties in interest. A firm, experienced bidder provides a base of certainty needed by the Debtors' employees, vendors and customers. The Auction and sale process set forth herein will allow the Debtors to maximize their value through a going concern sale, as opposed to recognizing lesser value through a piecemeal sale or other liquidation strategy.

40.     Accordingly, the proposed Sale, as well as the terms of the Purchase Agreement, should be approved.

## G.     A Sale Free And Clear Of Liens, Claims, Encumbrances, And Interests Is Appropriate

41.     It is appropriate for the Debtors' assets to be sold to the High Bidder free and clear of liens, claims, encumbrances, and interests pursuant to section 363(f) of the Bankruptcy Code (other than permitted encumbrances and expressly assumed liabilities), with any such liens, claims, encumbrances, or interests to attach to the net sale proceeds of such sale. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.)*, 5 B.R. 1, 8 (Bankr. D. Me. 1979) (finding the Court's power to sell property free and clear of liens has long been recognized); *see*

*also In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982) ("Generally, in a 'free and clear' sale, the liens are impressed on the proceeds of the sale and discharged at the time of sale ....").

42.     Any lien, claim, encumbrance, or interest in the Debtors' assets (other than permitted encumbrances and expressly assumed liabilities) will be adequately protected by attachment to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto. *See In re Circus Time, Inc.*, 5 B.R. at 7. Moreover, each of the parties that may hold such liens on the assets sold could be compelled to accept a monetary satisfaction of such interests, satisfying section 363(f)(5) of the Bankruptcy Code. Thus, sale of the Debtors' assets free and clear of liens, claims, encumbrances, and interests (other than permitted encumbrances and expressly assumed liabilities) will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code. Accordingly, the Debtors' request that their assets be transferred to the High Bidder free and clear of all liens, claims, encumbrances, and interests (other than permitted encumbrances and expressly assumed liabilities), with any such liens, claims, encumbrances, and interests to attach to the net sale proceeds realized from the sale.

**H.     The Assumption And Assignment Of Contracts Satisfies Section 365 of the Bankruptcy Code**

43.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). Upon finding that a debtor has exercised proper business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code. *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18,25 (2d Cir. 1996); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

44.     The assumption and assignment of executory contracts and unexpired leases to the Purchaser or another High Bidder is in the best interests of the Debtors' estates and a proper exercise of the Debtors' business judgment.  In addition to maximizing the consideration received in exchange for the 'Sale, it also allows the Debtors to avoid rejection damages that otherwise would accrue if those contracts or leases were to be rejected.  Under the Purchase Agreement, the Purchaser has agreed to pay all cure amounts associated with assumption and assignment of the Assumed Contracts.

45.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor in possession may assign an executory contract or unexpired lease of nonresidential real property if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease."  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *See Carlisle Homes, Inc.* v. *Arrari (In re Carlisle Homes, Inc.),* 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (citation omitted); *see also In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.,* 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

46.     Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See In re Bygaph, Inc.,* 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial

resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

47.     At and after the Sale Hearing, the Debtors and the High Bidder will be prepared to proffer testimony or present evidence to demonstrate the financial credibility, willingness, and ability of the Purchaser or other High Bidder to perform under the contracts and leases to be assumed and assigned. The High Bidder, therefore, will provide the Court and other interested parties with the opportunity to evaluate their ability to provide adequate assurance of future performance under the contracts and leases to be assumed and assigned, as required by section 365 of the Bankruptcy Code. Accordingly, the Debtors respectfully request that at the conclusion of the Sale Hearing, the Court approve the assumption and assignment of certain contracts and leases, to be effective upon entry of the Sale Order (and retroactive to such date with respect to Additional Contracts designated by the High Bidder after the close of the Sale).

48.     Notwithstanding any anti-assignment language in any contract or lease to be assumed and assigned, including a change of control provisions, the Debtors seek permission to assign such agreement, provided that the Debtors first assume the contract or lease and then provide adequate assurance of future performance by the Purchaser or other High Bidder. To facilitate the assumption and assignment of the contracts and leases to be assumed and assigned, the Debtors will request at or after the Sale Hearing that the Court find any anti-assignment provisions of the contracts and leases to be assumed and assigned, including a change of control provisions, to be unenforceable under section 365(f) of the Bankruptcy Code.[3]

---

[3]     Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease ... " 11 U.S.C. § 365(f)(1). Section 365(f)(3) further provides that "Notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract,

49.     Section 365(k) of the Bankruptcy Code provides that assignment by the debtor to an entity of a contract or lease "relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment." 11 U.S.C. § 365(k). Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability for any breach of any assumed and assigned lease or contract after such assignment to and assumption by the High Bidder.

## I.     The Proposed Purchaser Is A Good Faith Purchaser

50.     Section 363(m) of the Bankruptcy Code states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code thus provides that a purchaser of property of the estate is protected from the effects of a reversal on appeal of the authorization to sell such property as long as the purchaser acted in good faith and the appellant failed to obtain a stay of the sale.

51.     Although the Bankruptcy Code does not define the meaning of "good-faith purchaser," most courts have adopted a traditional equitable definition: "one who purchases the assets for value, in good faith and without notice of adverse claims." *See, e.g., Licensing by Paolo*, 126 F.3d at 390. The Second Circuit has stated that:

> [g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made. A purchaser's good faith is lost by 'fraud, collusion between the

---

lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Id.* (internal citations omitted).

52. The terms and conditions of the Purchase Agreement were negotiated by the Debtors and Purchaser at arm's length and in good faith. Each party was represented by sophisticated counsel. Accordingly, the Debtors request that the Court determine that the Purchaser has acted in good faith and is entitled to the protections of a good faith purchaser under section 363(m) of the Bankruptcy Code.

## J. Relief Under Bankruptcy Rules 6004(H) and 6006(D) Is Appropriate

53. Bankruptcy Rule 6004(h) provides an "order authorizing the use, sale, or lease of property is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Bankruptcy Rule 6006(d) further provides that an "order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d). In light of the Debtors' limited liquidity and their corresponding need to consummate the sale, the order approving the sale of the Purchased Assets, if granted, and the assumption and assignment of the Assumed Contracts to the Purchaser in accordance with this Motion must be effective immediately upon entry of such order.

## NOTICE

54. Notice of this Motion has been given to: (a) the United States Trustee; (b) Silver Point Finance, LLC, as agent to the first lien lenders to the Debtors; (c) counsel to Silver Point Finance, LLC, as agent to the first lien lenders to the Debtors; (d) HHI Funding, LLC (e) counsel to HHI Funding, LLC (f) Benjamin R. Jacobson, (g) the GR Group, (h) the Debtors' thirty largest unsecured creditors as set forth in the consolidated list filed with the Debtors' petitions;

(g) all required governmental agencies; and (h) J. P. Morgan Chase, as the Debtors' deposit bank. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

**WHEREFORE**, the Debtors respectfully request: (1) entry of the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**; (2) entry of Sale Order, substantially in the form attached hereto as **Exhibit B**; and (3) such other and further relief as the Court deems just and proper.

Dated:  August 27, 2009          **POTTER ANDERSON & CORROON LLP**
       Wilmington, Delaware

                                Steven M. Yoder (DE Bar No. 3885)
                                Jeremy W. Ryan (DE Bar No. 4057)
                                Hercules Plaza, Sixth Floor
                                1313 N. Market Street
                                P.O. Box 951
                                Wilmington, Delaware 19899-0951
                                Telephone: (302) 984-6000
                                Facsimile: (302) 658-1192

*Proposed Co-Counsel for*
*Debtors and Debtors in Possession*

-and-

**STROBL & SHARP, P.C.**
Lynn M. Brimer (*pro hac vice* pending)
Meredith E. Taunt (*pro hac vice* pending)
Andrew A. Ayar (*pro hac vice* pending)
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
Telephone: (248) 540-2300
Facsimile: (248) 645-2690

*Proposed Counsel for Debtors and Debtors in Possession*