IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| FORMTECH INDUSTRIES, LLC ) | Case No. 09-12964 (MFW) |
| and FORMTECH INDUSTRIES ) | Jointly Administered |
| HOLDINGS LLC,[1] ) | |
| ) | Hearing Date: October 1, 2009 at 2:00 p.m. |
| Debtors. ) | Objection Deadline: September 24, 2009 at 4:00 p.m. |
| ) | |

## APPLICATION OF THE DEBTORS FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF DONNELLY PENMAN & PARTNERS, AS INVESTMENT BANKER, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (the "Debtors") hereby move the Court, pursuant to this application (this "Application"), for entry of an order, substantially in the form attached hereto, authorizing the Debtors to employ and retain Donnelly Penman & Partners ("DP&P"), as investment banker for the Debtors, effective *nunc pro tunc* to the Petition Date (defined below). In support of this Application, the Debtors rely on the Declaration of James C. Penman of DP&P (the "Penman Declaration") attached hereto as **Exhibit A**. In further support of this Application, the Debtors respectively represent as follows:

### Jurisdiction

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers following in the parentheses): FormTech Industries Holdings, LLC (3828), FormTech Industries, LLC (4879). The mailing address for each of the Debtors is 2727 W. Fourteen Mile Rd., Royal Oak, MI 48073.

3. The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (11 U.S.C. §§ 101–1532, the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules").

## Background

4. On August 26, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases (the "Chapter 11 Cases")

5. On September 3, 2009, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

6. The Debtors constitute the leading manufacturer in the United States of precision hot forgings for sale to the automotive equipment manufacturers ("OEMs") and Tier 1 suppliers to the OEMs. The forgings produced by the Debtors go into most every automobile and truck produced in the United States. Sample parts produced from the Debtors' forgings include gears and shafts for transmissions and transfer cases, clutch housings, bearing races and wheel spindles.

7. The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the Declaration of Charles W. Moore, the Chief Financial Officer of the Debtors in Support of First Day Pleadings [D.I. 14] (the "Moore Declaration"), which is incorporated herein by reference.

## Relief Requested

8. The Debtors seek the entry of an order, substantially in the form attached hereto, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Local Rule 2014-1, authorizing the employment and retention of DP&P in accordance with the terms and conditions set forth in that certain Engagement Agreement among the Debtors and DP&P, dated August 27, 2009 (the "Engagement Agreement"), a copy of which is attached hereto as **Exhibit B**.

## The Retention of DP&P

9. In connection with these Chapter 11 Cases, DP&P will advise the Debtors in their pursuit of asset disposition options that include, without limitation, a sale as a going concern, third party investment and other options.

10. The current managing directors, vice presidents and associates of DP&P have extensive experience working with financially troubled companies in complex in and out-of-court financial restructurings. DP&P and its principals have been involved as advisors to debtor, creditor and equity constituencies and government agencies in numerous chapter 11 proceedings.

11. The resources, capabilities and experience of DP&P are crucial to the Debtors' successful restructuring. An experienced investment banker such as DP&P fulfills a critical need that complements the services offered by the Debtors' other professionals. Broadly speaking, DP&P will concentrate its efforts in assisting the Debtors in connection with the potential sale of the Debtors' assets, either in whole or in part.

12. DP&P is an investment banking/financial advisory firm whose services are organized along industry groups, with particular emphasis in the areas of manufacturing, financial services, distribution, retail, technology, and healthcare. In this practice, DP&P provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring. DP&P is a leading advisor and investment

banker to companies seeking restructuring, both inside and outside of bankruptcy, as well as creditor groups, equity sponsors and other parties-in-interest involved with financially challenged companies. DP&P's professionals have served as financial and strategic advisors for debtors, creditors, and other constituents in numerous out-of-court and chapter 11 cases throughout the United States, including, among others, *Cadence Innovation LLC*, *Collins & Aikman Corp.*, *Jernberg Indus., Inc.*, *SAI Holdings Ltd.*, *Federal Forge, Inc.* and *Buffalo Molded Plastics, Inc.* In addition, an overview of the qualifications of those DP&P employees expected to be active in this matter is attached to the Penman Declaration as **Schedule 3**. As noted above, the Debtors believe that DP&P is well qualified to perform those services and represent the Debtors' interests in these Chapter 11 Cases.

### Basis for Relief

13. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, a trustee, debtor in possession and committee appointed under section 1102 of the Bankruptcy Code may employ one or more professionals, that do not hold or represent an interest adverse to the estate and that are disinterested persons, to assist such parties in carrying out their duties under the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 327(a); Bankruptcy Rule 2014; Local Rule 2014-1(a).

14. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

PAC/931245

4

15. The Debtors believe that the employment of DP&P would be in the best interests of the Debtors and their estates and desire to employ DP&P, effective on the Petition Date, with compensation as set forth in the Engagement Agreement.

16. By this Application, the Debtors request that the Court approve the compensation arrangements described in the Engagement Agreement pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. The compensation arrangements contained in the Engagement Agreement are highly beneficial to the Debtors' estates as they provide certainty and proper inducement for DP&P to act expeditiously and prudently with respect to the matters for which it will be retained.

17. The Engagement Agreement appropriately reflects (a) the nature and scope of services to be provided by DP&P, (b) DP&P's substantial experience with respect to investment banking services and (c) the fee structures typically utilized by DP&P and other leading investment banks that do not bill their clients on an hourly basis.

A. **Services to Be Provided**

18. As further set forth in the Engagement Agreement, the Debtors have requested that DP&P serve as financial advisor during these Chapter 11 Cases to perform a broad range of services (the "Services") on behalf of the Debtors, which include:[2]

(a) Identifying prospective parties to a Transaction (as defined below) ("Prospects");

(b) Preparing information describing the Company, its operations and financial performance;

(c) Disseminating information regarding the Company to Prospects (provided that DP&P will not contact Prospects regarding a Transaction without prior consent of FormTech);

(d) Conducting sell-side due diligence on the Company;

(e) Organizing a data room(s) (virtual or otherwise) with information relevant to Prospects;

---

[2] Capitalized terms not defined herein shall have the meaning set forth in the Engagement Agreement.

(f) Coordinating due diligence with Prospects;

(g) Negotiating the structure and terms of a potential Transaction (as defined below) with Prospects;

(h) Assisting FormTech and their counsel in conducting auctions (an "Auction") of the Company under the auspices of the Bankruptcy Court;

(i) Assisting FormTech and their counsel with the preparation and negotiation of closing documentation relating to a Transaction (as defined below);

(j) Assisting FormTech and their counsel in preparing necessary documentation and information in connection with obtaining approval by the Bankruptcy Court of proposed Transactions (as defined below); and

(k) Providing relevant testimony at hearings before the Bankruptcy Court or other courts as FormTech may request with respect to the foregoing.

**B. Professional Compensation**

19. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

20. As set forth more fully in the Engagement Agreement, and subject in its entirety to the terms set forth in the Engagement Agreement, DP&P will be compensated for the Services, subject to Court approval, in the following manner (the "Fee Structure"):[3]

    a. An initial, non-refundable cash advisory fee (the "Initial Fee") of $50,000 payable upon the approval of this Application.

    b. A non-refundable cash advisory fee (the "Monthly Fee" and together with the Initial Fee, the "Advisory Fees") of $15,000 per month payable by the Debtors on the first day of the month commencing September 1, 2009.

---

[3] All terms set forth herein are subject in their entirety to the Engagement Agreement. Except as explicitly stated herein, to the extent anything set forth in this Application conflicts with the Engagement Agreement, the Engagement Agreement controls.

c. Immediately upon the consummation of a Transaction, a cash fee (the "Transaction Fee") will be payable to DP&P. The Transaction Fee will be equal to a percentage of consideration received in the Transaction. The Transaction Fee is equal to 0.50% of the first $65.0 million of total consideration plus 2.50% of total consideration in excess of $65.0 million.

d. Any amounts paid as Advisory Fees will be applied against the next Transaction Fee payable to DP&P under the Engagement Letter until fully applied. The Transaction Fee will be reduced to the extent of the applied Advisory Fees. However, in no event will the minimum Transaction Fee payable to DP&P, after applying the Advisory Fees, be less than $300,000 at the closing of a Transaction.

e. To the extent requested in writing by FormTech, DP&P shall be paid a fee of $50,000 (the "Fairness Opinion Fee") to prepare a report to opine on the fairness of a Transaction to the various constituents of the Company.

f. After the closing of a Transaction in which DP&P was involved, upon the request of the Debtors, DP&P will testify or appear at any judicial or regulatory hearing or deposition or other appearance in connection with any legal process relating to the Transaction. The Debtors will compensate DP&P, at an hourly rate of $350/hour for time expended giving such testimony through deposition or hearing. The Debtors will also reimburse DP&P for its reasonable costs and expenses incurred in connection with these activities.

21. The Fee Structure described above is consistent with DP&P's normal and customary billing practices for comparably sized and complex cases, both in and out-of-court, involving the services to be provided in these Chapter 11 Cases. The Fee Structure is consistent with and typical of arrangements entered into by DP&P and other investment banking firms of comparable standing in connection with the rendering of similar services to clients such as the Debtors. DP&P and the Debtors believe that the Fee Structure is both reasonable and market-based. The Debtors and DP&P engaged in extensive arms' length negotiations regarding the Engagement Agreement and compensation to be paid thereunder prior to execution.

22. To induce DP&P to do business with the Debtors in these Chapter 11 Cases, the Fee Structure was established to properly incentivize DP&P, to reflect the difficulty of the extensive assignments DP&P expects to undertake and to account for the potential for an unfavorable outcome as a result of factors outside of DP&P's control.

23. DP&P requests that its professionals be excused from maintaining time records as set forth in the applicable Local Rules and the United States Trustee Guidelines in connection with the services to be rendered pursuant to the Engagement Letter, and request that it be permitted instead submit time records in one-half hour increments in accordance with its normal practice.

24. DP&P's investment banking expertise, as well as its automotive experience, capital markets knowledge, financing skills, some or all of which may be required by the Debtors during the term of DP&P's engagement hereunder, were important factors in determining the Fee Structure, and that the ultimate benefit to the Debtors derived from the services provided by DP&P hereunder can not be measured by a reference to the number of hours expended by DP&P's professionals.

25. The Fee Structure (including the contingent Transaction Fee) has been agreed upon in anticipation that a substantial commitment of professional time and effort will be required of DP&P and its professionals and in light of the fact that (a) such commitment may foreclose other opportunities for DP&P and (b) the actual time and commitment required of DP&P and its professionals to perform its services may vary substantially from week to week and month to month, creating "peak load" issues for DP&P.

26. In light of the foregoing and given the numerous issues that DP&P may be required to address in the performance of its services hereunder, DP&P's commitment to the

variable level of time and effort necessary to address all such issues as they arise, and the market prices for DP&P's services for engagements of this nature both in the in and out-of-court contexts, the Debtors believe that the Fee Structure (including the Transaction Fee) is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

27. The Debtors will reimburse the reasonable expenses of DP&P. These reimbursement obligations shall not exceed $15,000 without the prior written consent of the Debtors. DP&P will follow its customary expense reimbursement guidelines and practices in seeking expense reimbursement from the Debtors.

28. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g., In re Calpine Corp.*, Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. May 2, 2006); *In re Tower Auto., Inc.*, Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Jun. 15, 2005); *In re Spiegel*, Case No. 03-11540 (CB) (Bankr. S.D.N.Y. Aug. 7, 2003); *In re NextWave Pers. Commc'ns, Inc.*, Case No. 98-21529 (ASH) (Bankr. S.D.N.Y. Oct. 1, 2001); *In re Casual Male Corp.*, Case No. 01-41404 (REG) (Bankr. S.D.N.Y. Jul. 20, 2001); *see also In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 26, 2007). Accordingly, the Debtors believe that DP&P's retention on the terms and conditions proposed herein is appropriate.

29. DP&P will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines and orders of this Court.

30. In accordance with section 504 of the Bankruptcy Code, DP&P has informed the Debtors that there is no agreement or understanding between DP&P and any other entity, other than an employee of DP&P, for the sharing of compensation received or to be received for services rendered in connection with these cases.

### C. DP&P's Disinterestedness

31. Except as set forth below and/or in the Penman Declaration, the professionals at DP&P, to the best of the Debtors' knowledge, do not represent any interest materially adverse to the Debtors, their creditors, the United States Trustee, any person employed by the Office of the United States Trustee or any other party in interest.

32. DP&P has informed the Debtors that DP&P may have and may continue to provide financial advice and/or have other relationships with parties other than the Debtors pursuant to which DP&P may acquire information of interest to the Debtors, but DP&P has informed the Debtors that it is not presently representing any party in connection with the representation described in the Engagement Agreement that has interests that conflict with those of the Debtors. Given its diverse practice and client base, DP&P may represent clients in matters unrelated to these Chapter 11 Cases who are or become creditors or debtors of the Debtors. DP&P has not provided and will not in the future provide services to creditors or parties in interest of the Debtors in connection with any matters relating to its representation of the Debtors in these Chapter 11 Cases.

33. As described in the Penman Declaration, DP&P has, among other things, searched its client databases to determine whether it represents, or has represented certain of the Debtors' creditors or other parties in interest in these proceedings, and/or matters wholly unrelated to these proceedings. Due to the size of DP&P and the number of creditors and other parties in

interest involved in these Chapter 11 Cases, however, DP&P may have represented certain of the Debtors' creditors or other parties in interest in matters wholly unrelated to these Chapter 11 Cases. Except as may be described in the Penman Declaration, DP&P does not, to its knowledge, represent any party with an interest materially adverse to the Debtors or their estates.

34. Accordingly, the Debtors believe that DP&P is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code. The Debtors submit that their employment of DP&P would be in the best interest of the Debtors, their estates and creditors. The Debtors' knowledge, information and belief regarding the matters set forth herein are based upon, and made in reliance on, the Penman Declaration.

**D.    Other Provisions of Engagement Agreement**

*Indemnity Provisions*

35. As set forth in the Engagement Agreement and Schedule A thereto and subject to the terms and conditions therein, the Debtors agreed to the following (the "Indemnity Provision"), which is set forth as **Addendum A** to the Engagement Agreement:

> Formtech Industries LLC ("FormTech") will indemnify and hold harmless DP&P and its affiliates, members, directors, agents, employees, and each other person controlling DP&P or any of its affiliates (each person is referred to as an "Indemnified Person") from all losses, claims, damages, liabilities and expenses (including reasonable counsel fees and expenses) to which any of them may become subject arising in any manner out of the performance by an Indemnified Person of services under the letter agreement (the "Engagement Letter") to which this **Addendum A** is attached (collectively referred to as "Claims"), except for Claims arising in any manner out of an Indemnified Person's gross negligence, bad faith, self dealing, or willful misconduct in performing the services that are the subject of the Engagement Letter. If the foregoing indemnification is determined to be unenforceable by a court of competent jurisdiction or insufficient to hold DP&P harmless, then FormTech will contribute to the amount paid or payable by DP&P as a result of such loss, claim, damage, liability or expense in such proportion as is appropriate to reflect the relative economic interests of FormTech on the one hand and DP&P on the other hand in the matters contemplated by the Engagement Letter as well as the relative fault of FormTech and DP&P with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations.
>
> If a Claim is made against an Indemnified Person for which FormTech is obligated to provide Indemnity, the Indemnified Person will, promptly upon learning of the existence of such Claim, notify (1) FormTech and counsel to FormTech, (2) the

Court, (3) the U.S. Trustee, and (4) the official committee of unsecured creditors in FormTech's bankruptcy proceedings of such Claim, but in all cases failure to provide the foregoing notices will not relieve FormTech from any liability which it may have hereunder or otherwise, except to the extent that such failure materially prejudices FormTech's rights or ability to defend against any claim related thereto. FormTech further agrees that it will not settle or compromise or consent to the entry of any judgment in any pending or threatened Claim in respect of which indemnification may be sought hereunder (whether or not an Indemnified Person is a party therein) unless FormTech has given DP&P reasonable prior written notice thereof and used all reasonable efforts, after consultation with DP&P, to obtain an unconditional release of each Indemnified Person from all liability arising therefrom.

The rights and obligations of FormTech under this **Addendum A** will be in addition to any rights and obligations the Indemnified Persons may have at common law or otherwise. The rights and obligations of the Indemnified Persons under this **Addendum A** and the respective rights and obligations of the Indemnified Persons and FormTech under the Engagement Letter will be governed by and construed in accordance with internal laws of the State of Delaware applicable to contracts executed in and to be performed in that state.

In the event that DP&P seeks reimbursement hereunder for attorney's fees during the Chapter 11 Cases, the invoices and supporting time records from such attorneys will be included in DP&P's own application (interim or final, as the case may be) and such invoices and time records will be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

36. The Debtors believe the Indemnity Provision is a reasonable term and condition of the DP&P engagement. Unlike the market for other professionals that the Debtors may retain, indemnification is a standard term of the market for investment bankers. DP&P and the Debtors believe that the Indemnity Provision is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to DP&P and for comparable engagements, both in and out of court.

### Notice

37. Notice of this Application has been given to: (a) the United States Trustee; (b) Silver Point Finance, LLC, as agent to the first lien lenders to the Debtors; (c) counsel to Silver Point Finance, LLLC, as agent to the first lien lenders to the Debtors; (d) HHI Funding, LLC (e)

counsel to HHI Funding, LLC (f) Benjamin R. Jacobson, (g) the GR Group, (h) counsel to the Committee; (g) all required governmental agencies; (h) J. P. Morgan Chase, as the Debtors' deposit bank; and (i) all other parties who have requested notice of pleadings in these cases. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## No Prior Request

38. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request the entry of an order: (a) authorizing and approving the retention and employment by the Debtors of DP&P as their investment banker, effective as of the Petition Date; and (b) granting such other and further relief as this Court deems just and proper.

Dated: September 7, 2009
Wilmington, Delaware

**FormTech Industries, LLC**
**FormTech Industries Holdings LLC**

*/s/ Charles W. Moore*
Charles W. Moore
Chief Financial Officer