# EXHIBIT B

**Engagement Agreement**

# DONNELLY PENMAN & PARTNERS
## INVESTMENT BANKING

August 27, 2009

Mr. Charles W. Moore
Senior Vice President, CFO

Mr. A. Jeffrey Zappone
Chief Restructuring Officer

FormTech Industries LLC
2727 W. Fourteen Mile Rd.
Royal Oak, MI 48073-1712

**Private and Confidential**

Dear Mr. Moore and Mr. Zappone:

It is our understanding that FormTech Industries LLC and all affiliated or commonly owned entities ("FormTech" or the "Company") desires to retain the services of Donnelly Penman & Partners ("DP&P"), to act as its sole, external investment banking advisor in helping the Company evaluate strategic alternatives, including the possible sale of all or a material portion of the assets or securities of the Company as a going concern to a third party (the "Transaction") upon terms acceptable to the Company. This letter agreement (the "Agreement") is intended to serve as our agreement to provide the services outlined herein, to the extent requested by the Company.

1. **Scope of Services**

As investment banking advisor, DP&P will provide the following services to the extent requested by FormTech:

(a) Identify prospective parties to a Transaction (as defined below) ("Prospects");

(b) Prepare information describing the Company, its operations and financial performance;

(c) Disseminate information regarding the Company to Prospects (provided that DP&P will not contact Prospects regarding a Transaction without prior consent of FormTech);

(d) Conduct sell-side due diligence on the Company;

(e) Organize a data room(s) (virtual or otherwise) with information relevant to Prospects;

(f) Coordinate due diligence with Prospects;

(g)  Negotiate the structure and terms of a potential Transaction (as defined below) with Prospects;

(h)  Assist FormTech and their counsel in conducting auctions (an "Auction") of the Company under the auspices of the Bankruptcy Court;

(i)  Assist FormTech and their counsel with the preparation and negotiation of closing documentation relating to a Transaction (as defined below);

(j)  Assist FormTech and their counsel in preparing necessary documentation and information in connection with obtaining approval by the Bankruptcy Court of proposed Transactions (as defined below); and

(k)  Provide relevant testimony at hearings before the Bankruptcy Court or other courts as FormTech may request with respect to the foregoing.

As used herein, the term "Transaction" will mean, collectively, whether accomplished in whole or in part pursuant to a plan of reorganization confirmed in connection with the Chapter 11 Cases (a "Chapter 11 Plan"), via a sale under section 363 of the Bankruptcy Code, or otherwise: (i) any merger, consolidation, reorganization, recapitalization, or other business combination pursuant to which all or a material portion of the assets or securities of the Company are acquired by, or combined with, any person, group of persons, partnership, corporation or other entity (an "Acquirer"); (ii) any acquisition as a going concern, directly or indirectly, by an Acquirer (or a "group," as defined in Section 13(d)(3) of the Securities Exchange Act of 1934, as amended) of (A) all or a material portion of the assets or securities of the Company or (B) the beneficial ownership of any newly issued shares of the capital stock or other equity securities (or rights to acquire the same) of the Company for the purpose of effecting a recapitalization or change of control of the Company; (iii) any acquisition that is effected by means of a credit bid pursuant to section 363(k) of the Bankruptcy Code or any Transaction that results in the lenders holding all or a material portion of the assets or securities of the Company ("Credit Bid"); or (iv) any transaction similar to the foregoing having the effect of a transfer of all or a material portion of the assets or securities of the Company but specifically excluding a liquidation sale by any public auction conducted by a recognized auctioneer.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, DP&P is not assuming any responsibility for FormTech's decision to pursue (or not to pursue) or to effect (or not to effect) any Transaction, or other transaction; provided that nothing contained herein will increase FormTech's obligations set forth in **Addendum A** hereto. DP&P will not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to FormTech, and will have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

2. **Application for Retention of DP&P**

DP&P and FormTech hereby acknowledge that FormTech will apply (the "Application") promptly to the Bankruptcy Court under sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of this Agreement, in form and substance reasonably acceptable to DP&P (the "Retention Order"). The Application and proposed Retention Order will be nunc pro tunc to the date of this letter. FormTech will continue to use its best efforts to obtain Bankruptcy Court approval of DP&P's retention under the terms of this Agreement. DP&P will not have any obligation to provide any services under this Agreement unless its retention under the terms of this Agreement is approved by entry of a final order by the Bankruptcy Court in a Retention Order in form and substance reasonably satisfactory to DP&P.

DP&P acknowledges that in the event that the Bankruptcy Court approves its retention by FormTech pursuant to the above process, payments to DP&P as provided in this Agreement will be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any order approving its retention except as otherwise provided in the Retention Order. In seeking authority to retain DP&P under section 328(a) of the Bankruptcy Code, FormTech acknowledges that: (a) it believes that DP&P's general professional experience and expertise, its knowledge of the industry in which FormTech operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of FormTech in pursuing any Transaction or other transaction; (b) the value to FormTech of DP&P's services hereunder derives in substantial part from such expertise and experience; and, (c) accordingly, the structure and amount of the Advisory Fee and the Transaction Fee (each as defined below), the expense reimbursements provided for herein and the indemnification provisions provided herein and in Addendum A hereto are reasonable regardless of the number of hours to be expended by DP&P's professionals in performance of the services to be provided hereunder. Additionally, FormTech agrees to pay all fees and expenses due under this Agreement as promptly as practicable in accordance with the terms hereof and the Retention Order.

In the event that the Bankruptcy Court approves its retention by FormTech, DP&P agrees that during the pendency the Chapter 11 Cases, it will continue to perform its obligations under this Agreement and that it will file interim and final applications for allowance of the fees and expenses payable to it under the terms of this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure and the local rules and Retention Order.

3.  **Compensation**

In consideration for the services to be provided by DP&P, as described in Section 1 hereof, FormTech agrees to compensate DP&P as follows:

(a) *Transaction Fee.* At the closing of each Transaction, DP&P will be paid a cash fee (the "Transaction Fee") equal to the Applicable Percentage(s) as set forth below of the Consideration (as defined below) paid or received on or before such closing for such Transaction (Consideration for separate Transactions will be accumulated for purposes of determining the Applicable Percentage(s); Transaction Fees for an individual Transaction will be based on the Applicable Percentage(s) specified below for the incremental Consideration added to the accumulated sum by virtue of such individual Transaction).

| Cumulative Consideration | Applicable Percentage |
| --- | --- |
| Less than or equal to $65.0 million | 0.50% |
| $65.0 million and above | 2.50% |

For purposes hereof, "Consideration" will be determined as follows:

1) Consideration will include the total value of all cash and fair market value of promissory notes, deferred payment obligations (whether or not memorialized by a promissory note), securities and other property paid by the Acquirer to FormTech or on behalf of FormTech, to its creditors, or otherwise to holders of claims against or equity interests in FormTech on account of such claims or equity interests.

2) Consideration will also include the principal amount of all indebtedness (or guarantees thereof) for borrowed money assumed by any acquiring party in the Transaction (for clarity, excluding normal course trade payables and pension liabilities).

3) The value of any publicly traded securities received (whether debt or equity) will be deemed to be the average of the last reported sales prices of the securities on the twenty (20) consecutive business days prior to the consummation of the Transaction as reported on the principal exchange on which the security is listed; provided that the value of securities that are not freely tradable or have no established public market will be the fair market value thereof as reasonably agreed-upon by the parties hereto.

4) If any part of the Consideration will be deferred or contingent upon future earnings, then DP&P will be entitled to cash Transaction Fee on such

additional Consideration, and the term Consideration will include such additional compensation. However, the Transaction Fee for such deferred or contingent Consideration will be payable when such Consideration is paid to FormTech or its creditors and will be calculated using the formula set forth in Section 4(a) by adding this additional Consideration to all other Consideration previously paid. Consideration will not be reduced by amounts placed in escrow or other similar arrangements, but will be deemed deferred or contingent until actually paid to FormTech or its creditors.

No Transaction Fee will be payable under this Agreement unless and until a closing of a Transaction actually occurs. FormTech reserves the right at all times to decline any and all offers for any reason, without any obligation to pay a Transaction Fee hereunder.

(b) *Advisory Fees* FormTech will pay DP&P a non-refundable cash advisory fee to the extent this agreement has not been terminated as of the indicated dates (collectively, the "Advisory Fees"):

- on the later of approval of the retention of DP&P by the Bankruptcy Court or September 15, 2009, $50,000; and

- on the first day of each month commencing September 1, 2009, $15,000.

The Advisory Fees will be non-refundable even if FormTech terminates this Agreement, a Transaction does not occur or a Transaction is not approved by the Bankruptcy Court. Any amounts paid as Advisory Fees will be applied against the next Transaction Fee(s) payable under this Agreement until fully applied, and the Transaction Fee(s) due will be reduced to the extent of the Advisory Fees so applied. However, in no event will the minimum Transaction Fee payable to DP&P, after applying the Advisory Fees, be less than $300,000.

(c) *Fairness Opinion Fee.* To the extent requested in writing by FormTech, DP&P shall be paid a fee of $50,000 (the "Fairness Opinion Fee") to prepare a report to opine on the fairness of a Transaction to the various constituents of the Company.

(d) *Reimbursement.* FormTech will reimburse DP&P for reasonable, documented out-of-pocket expenses incurred by DP&P in connection with this engagement. The expense reimbursement pursuant to this paragraph shall not exceed $15,000 without the prior consent of FormTech.

(e) *Testimony and Support.* In the event that, after the closing of a Transaction with respect to which services were provided by DP&P pursuant to this Agreement, any member, officer or employee of DP&P is requested by FormTech or is required to testify or appear at any judicial or regulatory hearing or deposition or other appearance in connection with any legal process relating to the Transaction,

FormTech will pay DP&P, at an hourly rate of $350/hour for each such member, officer or employee, for time expended giving such testimony through deposition or hearing. FormTech will also reimburse DP&P for its reasonable costs and expenses incurred in connection with the activities described in this paragraph.

FormTech and DP&P acknowledge and agree that (i) the hours worked, (ii) the results achieved and (iii) the ultimate benefit to FormTech of the work performed, in each case, in connection with this engagement, may be variable, and that FormTech and DP&P have taken such factors into account in setting the fees hereunder; provided, however, that with respect to the hours worked, DP&P will devote whatever resources as are required to fulfill the purposes of this engagement on a timely basis.

4. **Term**

The initial term of this Agreement will be for a period of twelve (12) months from the date of this Agreement (the "Initial Term"), provided that either party may terminate this Agreement, except for the Surviving Provisions (as defined below), at any time after sixty (60) days from the date of the complete execution of this Agreement (the "Early Termination") by giving the other party at least thirty (30) days prior written notice of such Early Termination. Unless terminated by an Early Termination, after the expiration of the Initial Term, the term of this Agreement will automatically renew on a month to month basis thereafter; provided that, after the expiration of the Initial Term, except for the Surviving Provisions (as defined below), this Agreement may be terminated by either party upon thirty (30) days written notice to the other party. Notwithstanding any termination or expiration of this Agreement: (a) Sections 3, 5 and 6 and Addendum A will survive any termination or expiration of this Agreement along with any other provisions which expressly or by implication survive termination or expiration (collectively the "Surviving Provisions"); and (b) DP&P will be compensated as outlined in Section 3 above if a Transaction for all or a material portion of the assets or securities of the Company for which DP&P has not been paid a Transaction Fee is consummated with any Prospects (included in DP&P marketing process) within six (6) months (the "Tail Period") after any termination or expiration of this Agreement unless this Agreement is terminated by DP&P without cause. All Surviving Provisions will be binding upon any successors or assigns of FormTech, including any trustee in bankruptcy.

5. **Indemnification**

In consideration of DP&P signing this Agreement and agreeing to perform services pursuant hereto, FormTech agrees to indemnify and hold harmless DP&P and each of its directors, officers, agents, employees and controlling persons (within the meaning of the Securities Act of 1933, as amended) to the extent and as provided in Addendum A attached hereto and incorporated herein by reference. The provisions of this Section 6 and Addendum A will survive any expiration or termination of this Agreement.

6. **General Terms**

(a) FormTech agrees that DP&P will have the right, subsequent to the closing of any Transaction, to place advertisements at its own cost in financial and other newspapers and journals describing its services hereunder, provided that DP&P

        will submit a copy of any such advertisements to FormTech for its approval, which approval will not be unreasonably withheld or delayed.

(b)     This Agreement will be governed by and construed in accordance with the laws of the State of Delaware. Any claim or controversy arising out of, or relating to this Agreement, or the breach thereof, will be exclusively within the jurisdiction of the Bankruptcy Court.

(c)     This Agreement will be binding upon and will inure to the benefit of the parties hereto and their respective successors and permitted assigns.

(d)     FormTech is a sophisticated business enterprise with competent internal financial advisors and legal counsel and FormTech has retained DP&P for the purposes set forth in this Agreement. The parties acknowledge and agree that their respective rights and obligations as set forth herein are contractual in nature. Accordingly, FormTech disclaims any intention to impose fiduciary obligations on DP&P by virtue of the engagement contemplated by this Agreement.

(e)     This Agreement may be executed in one or more counterparts, each of which will be an original but all of which will together constitute one instrument. This Agreement may also be executed by signatures on facsimiles hereof.

(f)     Each of DP&P and FormTech waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of DP&P pursuant to, or the performance by DP&P of, the services contemplated by this Agreement.

(g)     This Agreement and **Addendum A** constitute the entire agreement and understanding between DP&P and FormTech regarding the subject matter hereof and supersede any and all prior, contrary agreements and understandings, whether oral or written, relating to the subject matter hereof. This Agreement cannot be modified or changed nor can any of its provisions be waived, except by a writing signed by all parties.

(h)     In connection with DP&P's services, FormTech will furnish to DP&P such information and data relating to FormTech in its present form as DP&P may reasonably request to assist in the transaction. FormTech recognizes and confirms that DP&P, in the performance of its services hereunder: (A) may use such information received from FormTech, its advisors or Prospects, without independent verification by DP&P, only for purposes of performing its services hereunder and (B) does not assume responsibility for and will make no representations to any prospects regarding the accuracy or completeness of such information received from FormTech, its advisors or Prospects whether or not DP&P makes an independent verification thereof.

(i)     In connection with this Agreement, the term "Confidential Information" will mean all information furnished to DP&P in any form, and which is not otherwise public

information, previously known by DP&P or independently disclosed by third parties not under an obligation of confidentiality. DP&P agrees that during the term of this Agreement, unless FormTech has consented, or unless ordered to do so by a court or agency, DP&P will not reveal or disclose any such Confidential Information to any third party, except for its agents, advisors, officers, directors, partners, employees and representatives who have a need to utilize such Confidential Information during the term of this Agreement only for purposes of performing its services hereunder. FormTech will be deemed to have consented to the sharing and disclosure of Confidential Information by DP&P with (x) any lender operating in its capacities as agents for its secured lenders, and such agents' financial advisors, attorneys, officers, employees and other representatives, and (y) any Prospect or Acquirer who has executed a confidentiality agreement in form and substance acceptable to FormTech. Following the termination of this Agreement and this engagement, all such Confidential Information in DP&P's possession will be promptly returned to FormTech at FormTech's written request.

FormTech acknowledges and agrees that by providing investment banking services of the type described in this agreement, DP&P will not be considered to be engaging in the business of a person required to be licensed under Act 299, Public Acts of Michigan, 1980, as amended. MCL 339.2501 et seq. (the "Real Estate Brokers Licensing Act"). FormTech further agrees to waive any rights or defenses it may otherwise have under the Real Estate Brokers Licensing Act to contest the right, power and authority of DP&P to maintain an action for the collection of its compensation due under this Agreement. If FormTech attempts to assert any defense to the right of DP&P to maintain an action for the collection of its compensation due under this Agreement on the basis of any failure on the part of DP&P to allege and prove that it is or was licensed under the Real Estate Brokers Licensing Act at the time of its performance of services hereunder, FormTech will be liable for the payment of all costs and expenses of DP&P in connection with the enforcement by DP&P of its rights under this Agreement.

   If this Agreement conforms to your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

              Very truly yours,

              **DONNELLY PENMAN & PARTNERS**

              By: _____
                James C. Penman
                Managing Director


**AGREED AND ACCEPTED:**

**FORMTECH INDUSTRIES LLC**

By: _____
  Mr. A. Jeffrey Zappone
  Chief Restructuring Officer

## ADDENDUM A

## INDEMNIFICATION AGREEMENT BETWEEN DONNELLY PENMAN & PARTNERS AND FORMTECH INDUSTRIES LLC

Formtech Industries LLC ("FormTech") will indemnify and hold harmless DP&P and its affiliates, members, directors, agents, employees, and each other person controlling DP&P or any of its affiliates (each person is referred to as an "Indemnified Person") from all losses, claims, damages, liabilities and expenses (including reasonable counsel fees and expenses) to which any of them may become subject arising in any manner out of the performance by an Indemnified Person of services under the letter agreement (the "Engagement Letter") to which this Addendum A is attached (collectively referred to as "Claims"), except for Claims arising in any manner out of an Indemnified Person's gross negligence, bad faith, self dealing, or willful misconduct in performing the services that are the subject of the Engagement Letter. If the foregoing indemnification is determined to be unenforceable by a court of competent jurisdiction or insufficient to hold DP&P harmless, then FormTech will contribute to the amount paid or payable by DP&P as a result of such loss, claim, damage, liability or expense in such proportion as is appropriate to reflect the relative economic interests of FormTech on the one hand and DP&P on the other hand in the matters contemplated by the Engagement Letter as well as the relative fault of FormTech and DP&P with respect to such loss, claim, damage, liability or expense and any other relevant equitable considerations.

If a Claim is made against an Indemnified Person for which FormTech is obligated to provide Indemnity, the Indemnified Person will, promptly upon learning of the existence of such Claim, notify (1) FormTech and counsel to FormTech, (2) the Court, (3) the U.S. Trustee, and (4) the official committee of unsecured creditors in FormTech's bankruptcy proceedings of such Claim, but in all cases failure to provide the foregoing notices will not relieve FormTech from any liability which it may have hereunder or otherwise, except to the extent that such failure materially prejudices FormTech's rights or ability to defend against any claim related thereto. FormTech further agrees that it will not settle or compromise or consent to the entry of any judgment in any pending or threatened Claim in respect of which indemnification may be sought hereunder (whether or not an Indemnified Person is a party therein) unless FormTech has given DP&P reasonable prior written notice thereof and used all reasonable efforts, after consultation with DP&P, to obtain an unconditional release of each Indemnified Person from all liability arising therefrom.

The rights and obligations of FormTech under this **Addendum A** will be in addition to any rights and obligations the Indemnified Persons may have at common law or otherwise. The rights and obligations of the Indemnified Persons under this **Addendum A** and the respective rights and obligations of the Indemnified Persons and FormTech under the Engagement Letter will be governed by and construed in accordance with internal laws of the State of Delaware applicable to contracts executed in and to be performed in that state.

In the event that DP&P seeks reimbursement hereunder for attorney's fees during the Chapter 11 Cases, the invoices and supporting time records from such attorneys will be included in DP&P's own application (interim or final, as the case may be) and such invoices and time records will be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorney's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.