# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FORMTECH INDUSTRIES, LLC | ) | Case No. 09-12964 (MFW) |
| and FORMTECH INDUSTRIES | ) | |
| HOLDINGS LLC,[1] | ) | |
| Debtors. | ) | Jointly Administered |
| | ) Hearing Date: October 14, 2009 at 11:30 a.m. (ET) | |
| | ) Objection Deadline: October 7, 2009 at 4:00 p.m. (ET) | |

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MORRIS-ANDERSON & ASSOCIATES LTD. AS FINANCIAL ADVISOR, *NUNC PRO TUNC* TO SEPTEMBER 3, 2009

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this application (the "Application"), pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), for the entry of an order authorizing the Committee to retain and employ Morris-Anderson & Associates Ltd. ("MAA"), *nunc pro tunc* to September 3, 2009, pursuant to the terms of that certain engagement letter, dated as of September 3, 2009, a copy of which is attached hereto as **Exhibit A** (the "Engagement Letter"), as financial advisor to the Committee in connection with the above-captioned Chapter 11 case (the "Chapter 11 Case"). In support of its Application, the Committee relies upon the Declaration of Joel Dryer (the "Dryer

---

[1] The Debtors are the following two entities (followed by the last four digits of their respective taxpayer identification numbers): FormTech Industries Holdings, LLC (3828) and FormTech Industries, LLC (4879). The mailing address for each of the Debtors is: 2727 W. Fourteen Mile Rd., Royal Oak, MI 48073.

Declaration"), attached hereto as **Exhibit B** and incorporated herein by reference, and respectfully represents as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 328 and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Bankruptcy Rule 2014-1.

## BACKGROUND

2. On August 26, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court. The Debtor continues to operate its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, neither a trustee nor an examiner has been appointed in the Chapter 11 Case.

3. On September 3, 2009 (the "Committee Formation Date"), the United States Trustee for the District of Delaware (the "U.S. Trustee"), pursuant to section 1102 of the Bankruptcy Code, appointed the Committee. The U.S. Trustee appointed the following entities as members of the Committee: (i) Macsteel Jackson; (ii) International Union, UAW; and (iii) The Timken Company (each a "Member" and, collectively, the "Members"). On September 4, 2009, the U.S. Trustee filed the Notice of Appointment of Official Committee of Unsecured Creditors [D.I. 84].

4. At a meeting of the Committee on September 3, 2009, the Committee duly voted to appoint Macsteel Jackson as its chair and to select McDonald Hopkins LLC ("McDonald") as

lead counsel to the Committee and Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols") as Delaware co-counsel to the Committee in connection with the Chapter 11 Case.

5. On September 3, 2009, the Committee duly voted to retain MAA as its financial advisor in connection with the Chapter 11 Case.

## RELIEF REQUESTED

6. By this Application, the Committee seeks to employ MAA as its financial advisor, *nunc pro tunc* to September 3, 2009, pursuant to the terms of the Engagement Letter. The Committee respectfully requests entry of an order pursuant to sections 328 and 1103(a) of the Bankruptcy Code approving the Engagement Letter, authorizing the payments contemplated thereunder, and authorizing MAA to perform those financial advisory services that will be necessary during this Chapter 11 Case on behalf of, and for the benefit of, the Committee as more fully described below.

## RETENTION OF MAA

### A. Introduction

7. The Committee submits the Application because of its need to retain a financial advisor to help guide it through the Debtor's reorganization efforts and to assist it in the tasks associated with negotiating and implementing the Debtor's plan of reorganization. The Committee determined that MAA's broad experience and role as financial advisor to the Committee would best serve the interests of the Committee, its counsel and, by extension, the Debtor's unsecured creditors.

8. The Committee believes that MAA is well qualified and uniquely able to provide financial advisory services to it in this case in an efficient manner. The Committee submits that the services of MAA will complement, and not duplicate, the services of other of the Committee's professionals, agents or advisors. Moreover, as demonstrated in the Dryer

lead counsel to the Committee and Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols") as Delaware co-counsel to the Committee in connection with the Chapter 11 Case.

5. On September 3, 2009, the Committee duly voted to retain MAA as its financial advisor in connection with the Chapter 11 Case.

## RELIEF REQUESTED

6. By this Application, the Committee seeks to employ MAA as its financial advisor, *nunc pro tunc* to September 3, 2009, pursuant to the terms of the Engagement Letter. The Committee respectfully requests entry of an order pursuant to sections 328 and 1103(a) of the Bankruptcy Code approving the Engagement Letter, authorizing the payments contemplated thereunder, and authorizing MAA to perform those financial advisory services that will be necessary during this Chapter 11 Case on behalf of, and for the benefit of, the Committee as more fully described below.

## RETENTION OF MAA

### A. Introduction

7. The Committee submits the Application because of its need to retain a financial advisor to help guide it through the Debtor's reorganization efforts and to assist it in the tasks associated with negotiating and implementing the Debtor's plan of reorganization. The Committee determined that MAA's broad experience and role as financial advisor to the Committee would best serve the interests of the Committee, its counsel and, by extension, the Debtor's unsecured creditors.

8. The Committee believes that MAA is well qualified and uniquely able to provide financial advisory services to it in this case in an efficient manner. The Committee submits that the services of MAA will complement, and not duplicate, the services of other of the Committee's professionals, agents or advisors. Moreover, as demonstrated in the Dryer

lead counsel to the Committee and Morris, Nichols, Arsht & Tunnell LLP ("Morris Nichols") as Delaware co-counsel to the Committee in connection with the Chapter 11 Case.

5. On September 3, 2009, the Committee duly voted to retain MAA as its financial advisor in connection with the Chapter 11 Case.

## RELIEF REQUESTED

6. By this Application, the Committee seeks to employ MAA as its financial advisor, *nunc pro tunc* to September 3, 2009, pursuant to the terms of the Engagement Letter. The Committee respectfully requests entry of an order pursuant to sections 328 and 1103(a) of the Bankruptcy Code approving the Engagement Letter, authorizing the payments contemplated thereunder, and authorizing MAA to perform those financial advisory services that will be necessary during this Chapter 11 Case on behalf of, and for the benefit of, the Committee as more fully described below.

## RETENTION OF MAA

### A. Introduction

7. The Committee submits the Application because of its need to retain a financial advisor to help guide it through the Debtor's reorganization efforts and to assist it in the tasks associated with negotiating and implementing the Debtor's plan of reorganization. The Committee determined that MAA's broad experience and role as financial advisor to the Committee would best serve the interests of the Committee, its counsel and, by extension, the Debtor's unsecured creditors.

8. The Committee believes that MAA is well qualified and uniquely able to provide financial advisory services to it in this case in an efficient manner. The Committee submits that the services of MAA will complement, and not duplicate, the services of other of the Committee's professionals, agents or advisors. Moreover, as demonstrated in the Dryer

Declaration, MAA professionals have assisted and advised debtors, creditors, creditors' committees, bondholders, investors, and others in numerous bankruptcy cases such as Arclin US Holdings, Inc. and Senco International, Inc., among others.

9. Pursuant to the Engagement Letter, it is expected that MAA will provide the following services to the Committee:

(i) Assistance to the Committee in the review of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(ii) Assistance to the Committee with information and analyses required pursuant to a possible Debtor-In-Possession ("DIP") financing, including, but not limited to, preparation for hearings regarding the use of cash collateral and DIP financing;

(iii) Assistance with a review of any of the Debtors' proposed key employee retention and other critical employee benefit programs;

(iv) Assistance and advice to the committee with respect to the Debtors' identification of core business assets and the disposition of assets or liquidation of unprofitable operations;

(v) Assistance with a review of the Debtors' performance of cost/benefit evaluations with respect to the affirmation or rejection of various executor contracts and leases;

(vi) Assistance regarding the evaluation of business operations and identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

(vii) Assistance in the review of financial information distributed by the Debtors to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

(viii) Attendance at meetings and assistance in discussions with the Debtors, potential investors, banks, other secured lenders, the Committee and any other official committees organized in these Chapter II Cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(ix) Assistance in the review and/or preparation of information and analysis necessary for the confirmation of a plan of reorganization in these Chapter 11 Cases;

(x) Render such other general business consulting or such other assistance as to the Committee or its counsel may deem necessary that are consistent with the role of

a financial advisor and not duplicative of services provided by other professionals in these Chapter 11 cases.

10. The Committee believes that MAA's employment is in the best interests of the Debtor and its estate and creditors. Because of MAA's extensive experience in business reorganizations and mergers and acquisitions as well as its familiarity with the Debtor's business operations, the Committee believes that MAA is exceptionally well qualified to serve as its financial advisors in this Chapter 11 Case.

11. The Committee hereby requests that the Court approve MAA's retention *nunc pro tunc* to September 3, 2009. The Committee was unable to prepare and file a retention application prior to the date of this document due to (a) the amount of time necessary for MAA to process the volume of names required to be examined from a conflict of interest perspective, (b) the time necessary for the Committee to negotiate the terms of MAA's engagement, and (c) the need for MAA to provide immediate and necessary services to the Committee, which services include reviewing the Debtor's financial and operating information and analyzing various immediate issues confronting the Debtor and creditors in connection with the Debtor's restructuring, such as the Debtor's proposed financing arrangements and other "first day" motions. Accordingly, the Committee respectfully submits that the Committee's retention of MAA *nunc pro tunc* to September 3, 2009 is appropriate and in the best interests of the Committee and the Debtor's creditors.

### B. The Terms of MAA's Engagement

12. As described more fully in the Engagement Letter, MAA will be entitled to receive, as compensation for its services, its customary billing practices with respect to other charges and expenses, all pursuant to the provisions of sections 330 and 331 of the Bankruptcy

Code. The current billing rates of the primary members and associated of MAA who will be working on this engagement are set forth in the Dryer Declaration, submitted herewith. These hourly rates are subject to periodic adjustment to reflect economic and other conditions.

13. In addition, MAA will be entitled to seek reimbursement for reasonable and actual out of pocket expenses, including, but not limited to, travel costs, lodging, meals, research, telephone and facsimile, costs of reproduction, typing, computer usage, legal counsel and other direct expenses incurred in connection with MAA providing professional services to the Committee, as described in the Engagement Letter.

14. Subject to Court approval and pursuant to terms of the Engagement Letter, in connection with MAA's engagement to provide financial advisory services to the Committee, the Debtor shall indemnify and hold harmless MAA and its affiliates against any and all losses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, defending any action, suit, proceedings or investigation, to the extent and in the manner provided in Schedule I to the Engagement Letter.

15. As described more fully in the Dryer Declaration in support of the Application, the terms of the Engagement Letter are similar to the terms, both financial and otherwise, agreed to by MAA and other financial advisory firms, both inside and outside of bankruptcy.

16. The terms of the Engagement Letter were negotiated between the Committee and MAA, and reflect the extensive work to be performed by MAA in this Chapter 11 Case and the firm's financial advisory expertise.

17. In accordance with sections 328, 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court, MAA intends to apply to the Court for the payment of compensation for services rendered and reimbursement of

actual and necessary expenses incurred in connection with professional services rendered on behalf of the Committee.

### C. The Application Should be Approved Pursuant to Section 328(a) of the Bankruptcy Code

18. The Committee seeks to retain MAA pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in part, that a committee, "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including a retainer . . . ." 11 U.S.C. § 328(a). Section 328 reflects a significant departure from prior bankruptcy practice relating to the compensation of professionals, as it permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the Court of Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862.

### D. MAA is a Disinterested Party

19. To the best of the Committee's knowledge, information, and belief, and based upon the Dryer Declaration, MAA is a "disinterested person" as that term is defined in section

101(14) of the Bankruptcy Code. MAA's compliance with the requirements of section 504 of the Bankruptcy Code and Bankruptcy Rules 2014, 2016 and 5002 is set forth in greater detail in the Dryer Declaration.

20. To the best of the Committee's knowledge, information, and belief, and as described in the Dryer Declaration, MAA does not represent any of the Debtor's creditors or other parties to this Chapter 11 Case, or their respective attorneys or accountants, in any matter that is adverse to the interests of the estates with respect to the Debtor, the Chapter 11 Case or any matter that would impair MAA's ability to perform professional services for the Committee in an objective manner.

21. More specifically, as set forth in the Dryer Declaration, MAA, its members and employees:

(i) are not creditors, equity security holders or insiders of the Debtor;

(ii) are not and were not, within 2 years before the Petition Date, directors, officers, or employees of the Debtor; and

(iii) do not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor for any other reason.

22. Based on the Dryer Declaration, MAA has determined that none of its members or employees has any connection with the Debtor, its professional advisors, its creditors, members of the Committee or Office of the United States Trustee or any employee thereof, except as described on the list attached as Exhibit B-1 to the Dryer Declaration. However, none of these engagements are related to the Debtor or the Chapter 11 Case.

23. To the extent MAA discovers any additional facts bearing upon matters described herein or its engagement by the Committee during the period of its employment, MAA will supplement the information contained in the Application and the Dryer Declaration.

24. MAA has not been retained to assist any entity or person other than the Committee on matters relating to, or in connection with, the Debtor's Chapter 11 Case. If this Court approves the proposed employment of MAA by the Committee, MAA will not accept any engagement or perform any service for any entity or person other than the Committee in the Chapter 11 Case. MAA will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtor or parties in interest in the Chapter 11 Case; provided, however, that such services do not relate to, or have any connection with, the Chapter 11 Case.

## NOTICE

25. No trustee or examiner has been appointed in this Chapter 11 Case. The Committee has provided notice of this Application to: (a) counsel for the Debtors; (b) counsel for Silver Point Finance, LLC, as agent to the first lien lenders to the Debtors; (c) Benjamin R. Jacobson, as a holder of the Debtors' subordinated notes; (d) the GR Investment Group, Ltd., as a holder of the Debtors' subordinated notes; (e) the Office of the United States Trustee for the District of Delaware; and (f) those parties who have requested notice in this case pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor submits that no further notice is required or needed under the circumstances. No prior application for the relief requested herein has been presented to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Committee requests that this Court enter the Order in the form annexed hereto as **Exhibit C** (i) authorizing the Committee to employ and retain MAA as financial advisor in connection with this Chapter 11 Case, *nunc pro tunc* to September 3, 2009, (ii) authorizing the payment and reimbursement of MAA's fees and disbursements, subject to interim and final allowance thereof in accordance with sections 330 and 331 of the Bankruptcy Code or as otherwise ordered by the Court, and (iii) providing the Committee such other and further relief as the Court may deem just and proper.

Dated: September 17, 2009
       Wilmington, Delaware

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF FORMTECH INDUSTRIES
HOLDINGS, LLC AND FORMTECH
INDUSTRIES, LLC

By: Stefan Prociv, for Gerdau Macsteel, as
Chairman of Official Committee of Unsecured
Creditors

Name: _____
Title: Director Credit