## Exhibit A

**Engagement Letter**

# AGREEMENT for CONSULTING SERVICES

This Agreement for Consulting Services ("Agreement") is made and entered into this Third day of September, 2009, by and between MorrisAnderson & Associates, Ltd., a corporation duly organized and existing under the laws of the State of Illinois, with corporate offices located at 55 West Monroe Street, Suite 2500, Chicago, IL 60603 (hereinafter referred to as "MA&A") and the OFFICIAL COMMITTEE ("the Committee") OF UNSECURED CREDITORS RE: FORMTECH INDUSTRIES, LLC AND FORMTECH INDUSTRIES HOLDINGS, LLC, (hereinafter referred to as "Client"). In consideration of the mutual covenants herein contained, the parties agree as follows:

1. **Scope of Work.** From time to time, Client shall call upon MA&A to provide adequate qualified personnel to perform services for Client. This document is a general definition of the terms and considerations under which those projects are to be performed. The Work/Project Authorization attached hereto sets forth the scope of the engagement (the "Authorization"). If the Authorization does not cover the terms and conditions of this Agreement, the terms and conditions of this Agreement shall control. In the event of conflict between the terms of the Authorization and the terms of this Agreement, the terms of the Authorization shall control.

2. **Compensation.** MA&A shall be paid for any work undertaken at the agreed upon hourly rates contained in the Authorization from the estates of FormTech Industries, LLC and FormTech Industries Holdings, LLC (together, the "Debtors") subject to court approval. Such hourly rates may be adjusted by MA&A from time to time during the performance of services under any Authorization and this Agreement, in MA&A's sole discretion upon 30 days notice. MA&A acknowledges that payment of fees is subject to Court approval and that interim payment of fees will only be made by the Debtors in compliance with any Administrative Order entered by the Court. MA&A hereby acknowledges and agrees that neither the Client, nor any members of the Committee, nor counsel to the Committee are liable to it for payment of any fees of MA&A in connection with this Agreement.

3. **Reimbursement of Expenses.** MA&A shall be reimbursed for all expenses incurred directly relating to any work undertaken hereunder by the Debtors' estates, subject to court approval. Such expenses include but are not limited to: travel, lodging, meals, equipment and vehicle rental, and telephone, fax and photocopying charges. MA&A acknowledges that reimbursement of expenses is subject to Court approval and that interim reimbursement of expenses will only be made by the Debtors in compliance with any Administrative Order entered by the Court. MA&A hereby acknowledges and agrees that neither the Client, nor any members of the Committee, nor counsel to the Committee are liable to it for payment of any expenses of MA&A in connection with this Agreement.

4.  **Rights to Work Product.** Client shall retain exclusive rights to ownership of all work product hereunder. Work product includes reports issued pursuant to any Authorization, but excludes, among other things, all working papers of MA&A and any correspondence, memoranda, calculations, notes, etc. that MA&A may have used in the development of the reports above or such working papers or in the performance of any work covered by an Authorization. With Client's consent, MA&A shall have the right however to designate, in writing, certain work product, as belonging to MA&A, prior to the creation of such work product and such designated work product will be the exclusive property of MA&A.

5.  **Cancellation.** Either party hereto may terminate this Agreement prior to the completion of any project or work authorized hereunder by giving notice to the other party. Upon such termination of this Agreement, MA&A shall retain the right to apply for payment of fees incurred for all professional hours worked in accordance with Paragraph 2 hereof up to the time of any such termination plus all outstanding and unreimbursed expenses and administrative fees, subject to court approval.

6.  **Limitation of Liability.** MA&A assumes no responsibility or liability under this Agreement other than to render the services called for hereunder in good faith and with reasonable care. MA&A shall not be responsible for any action taken by Client in following or in declining to follow any advice or recommendations of MA&A. MA&A makes no express or implied representations and/or warranties to Client with respect to any conclusions that MA&A will reach any opinions that MA&A will render in performing the work under this Agreement. MA&A shall not be liable for any consequential or special damages arising out of the performance of the work or the failure to perform the work or services or for counsel given.

7.  **Confidentiality and Independence.** MA&A will maintain in strict confidence any and all information of a non-public nature relating to Client, the Debtors, these Cases or the Debtors' business that it may gain or develop in the course of its engagement by Client (including, without limitation, its own work product and advice to Client), and will not disclose any such information to any person during or after its engagement by Client except with the written consent of Client, as permitted by law or as required by court order. Upon termination of this Agreement, MA&A will return to Client all materials of a non-public nature received from Client in the course of its engagement, and will either deliver to Client or destroy any copies thereof that it may have made or received.

MA&A receives referrals and maintains business relationships with banks, insurance companies, financial organizations, investors, attorneys, etc. on a regular basis and has a variety of financial interests. Such relationships and interests, however, are always dealt with separately from Client's business. In conjunction with the confidentiality agreement contained herein, MA&A will not without Client's consent during the term of this Agreement nor thereafter knowingly provide any services to any person or entity regarding Client's business, other than to Client.

8. **Authorization.** Client warrants and represents that this Agreement has been duly authorized by the Committee and that this Agreement represents the valid and binding obligation of Client.

9. **Headings.** Paragraph headings of this Agreement have been inserted for convenience of reference only and shall not be construed to affect the meaning of this Agreement.

10. **Governing Law.** The terms of this Agreement shall be construed, interpreted and enforced under laws of the State of Louisiana without regard to the State of Louisiana rules concerning conflicts of laws.

11. **Counterparts.** This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts and transmitted by facsimile to the other parties, each of which when so executed and delivered by facsimile shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first above written.

MorrisAnderson & Associates, Ltd.

By: _____
Domenic Aversa, Principal

Dated: 9/24/09

The Official Committee of Unsecured Creditors of FormTech Industries, LLC and FormTech Industries Holdings, LLC

By: _____
Steve Prociv, Chairman

Dated: 9/22/09

# MA&A WORK/PROJECT AUTHORIZATION

In accordance with our Agreement for Consulting Services dated the Third day of September, 2009 the undersigned Client hereby authorizes MA&A to undertake the following work and/or projects, at the specified fees, all as stated below:

## DESCRIPTION OF WORK TO BE PERFORMED

1.  Assistance to the Committee in the review of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

2.  Assistance to the Committee with information and analyses required pursuant to a possible Debtor-In-Possession ("DIP") financing, including, but not limited to, preparation for hearings regarding the use of cash collateral and DIP financing;

3.  Assistance with a review of any of the Debtors' proposed key employee retention and other critical employee benefit programs;

4.  Assistance and advice to the committee with respect to the Debtors' identification of core business assets and the disposition of assets or liquidation of unprofitable operations;

5.  Assistance with a review of the Debtors' performance of cost/benefit evaluations with respect to the affirmation or rejection of various executor contracts and leases;

6.  Assistance regarding the evaluation of business operations and identification of areas of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

7.  Assistance in the review of financial information distributed by the Debtors to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

8.  Attendance at meetings and assistance in discussions with the Debtors, potential investors, banks, other secured lenders, the Committee and any other official committees organized in these Chapter II Cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

9.  Assistance in the review and/or preparation of information and analysis necessary for the confirmation of a plan of reorganization in these Chapter 11 Cases, including consideration of the proposed valuation of the new entity;

10. Render such other general business consulting or such other assistance as to the

Committee or its counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in these Chapter 11 cases.

**CONSULTING PROJECT FEES**

Consulting fees for the work described above will be based on the following billing rates:

| | |
|---|---|
| Domenic Aversa | $525 per hour |
| Joel Dryer | $500 per hour |
| Mark Iammartino | $300 per hour |
| Jason Paru | $300 per hour |
| Others as Needed | $250-$350 per hour |
| Administrative Assistance | $75 per hour |

MA&A is to be reimbursed by Debtor for all reasonable expenses incurred under this Work Authorization in accordance with the terms specified under Agreement for Consulting Services dated September 3, 2009.

Upon signing of this Authorization, MA&A will receive a retainer of $0 prior to commencement of the activities described herein. Subject to the provisions of the Agreement for Consulting Services and any Administrative Order entered by the Court, hourly fees and expenses will be billed and payable on a monthly basis. The retainer above will be held by MA&A as security for the payment of all fees and expenses due hereunder and will be applied to the last $0 of fees and expenses due and payable hereunder.

**CANCELLATION**

This Authorization can be canceled by either party at any time prior to the completion of this Authorization in accordance with Paragraph 6 of the Agreement.

The Official Committee of Unsecured Creditors of FormTech Industries, LLC and FormTech Industries Holdings, LLC

Dated: 9/21/09

By: _____
Steve Prociv, Chairman