# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 09-12964 (MFW) |
| | ) | |
| FORMTECH INDUSTRIES, LLC and | ) | |
| FORMTECH INDUSTRIES HOLDINGS LLC,[1] | ) | Jointly Administered |
| | ) | |
| | ) | **Related Docket #s 13, 14, 23, 31, 56, 62,** |
| Debtors. | ) | **65, 68, 78, 81, 83, 102, 107, 116, 123,** |
| | ) | **133, 141, 149, 153, 159, 161, 163, 164,** |
| | ) | **166, 167, 169, 170,** |

## ORDER: (A) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B) AUTHORIZING AND APPROVING PURCHASE AGREEMENT, (C) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (D) GRANTING RELATED RELIEF

This matter coming before the Court on the Debtors' Motion for Orders: (I)(A) Approving Bidding Procedures for the Sale of Substantially all the Debtors' Assets, (B) Scheduling the Auction, (C) Authorizing Payment of the Break-Up Fee and Expense Reimbursement, (D) Approving the Deposit Escrow Agreement, (E) Scheduling the Sale Hearing, (F) Approving the Assumption and Assignment Procedures Related to the Sale, and (G) Approving the Form of the Auction Notice; and (II) (A) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) Authorizing and Approving Purchase Agreement; (C) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (D) Granting Related Relief [Docket No. 13](the "Motion")[2]; due and proper notice of the Motion and the Sale Hearing

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers following in parentheses): FormTech Industries Holdings, LLC (3828), FormTech Industries, LLC (4879). The mailing address for each of the Debtors is 2727 W. Fourteen Mile Rd., Royal Oak, MI 48073.

[2] Each capitalized term used but not defined herein shall have the meaning ascribed thereto in the Motion.

having been given to all parties entitled to notice; the Court having reviewed the Motion and its exhibits; the Court having reviewed various objections filed to the Motion; the Court having conducted the Sale Hearing on the Motion on October 1, 2009 and having heard arguments of counsel, and otherwise being fully advised in the premises;

**THE COURT HEREBY FINDS THAT:**

### JURISDICTION, FINAL ORDER AND STATUTORY PREDICATES

A.     This Court has jurisdiction over the Motion, the transactions contemplated by the Amended and Restated Purchase Agreement Dated as of September 30, 2009 Among FormTech Industries, LLC, FormTech Industries Holdings, LLC and HHI Funding, LLC (including all exhibits, schedules, ancillary agreements and other attachments thereto, the "Amended Purchase Agreement") (all references to the Purchase Agreement in this Order and documents referenced in or incorporated by reference into this Order shall be to the Purchase Agreement as amended by the Amended Purchase Agreement as necessary or appropriate), and any other ancillary documents and agreements related thereto pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.     This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.     The statutory and rule-based predicates for the relief sought in the Motion are sections 105(a), 363(b), (f) and (m) and 365(a), (b) and (f) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, and Local Rule 6004-1.

CURRENT 15560345v5

D.     The Purchaser is a party in interest in the Debtors' cases arising under title 11 of the Bankruptcy Code and has standing to raise, appear, and be heard on any issue in such cases.

## SOUND BUSINESS PURPOSE

E.     The Debtors seek to convey the Purchased Assets, all of which are related to the Sellers' manufacturing businesses.

F.     The Debtors have demonstrated both: (1) good, sufficient, and sound business purposes and justifications for the Sale; and (2) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, the value of the Purchased Assets would be harmed by any delay of the Sale. Time is of the essence in consummating the proposed Sale.

## HIGHEST AND BEST OFFERS

G.     On September 8, 2009, this Court entered the Bidding Procedures Order (Docket No. 102) approving Bidding Procedures for the Purchased Assets. The Bidding Procedures provided a full, fair and reasonable opportunity for any person to make an offer to purchase the Purchased Assets. The Debtors conducted an Auction in accordance with the Bidding Procedures Order and complied with that order in all respects. The Purchaser complied with the Bidding Procedures Order.

H.     As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing: (1) the Debtors have adequately marketed the Purchased Assets; (2) the Purchase Price contained in the Purchase Agreement constitutes the highest and otherwise best offer for the Purchased Assets and provides fair and reasonable consideration therefor; (3) the Sale will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative; (4) no other party has offered to purchase the Purchased Assets for greater economic value to the Debtors or their estates; and (5) the consideration to be paid by the

-3-

Purchaser under the Purchase Agreement constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof or the District of Columbia.

I. The Purchaser has provided the Debtors with a deposit in an amount equal to $2,500,000 (such amount, together with the interest accrued thereon, the "Deposit"), which Deposit is currently being held by Wells Fargo Bank, N.A. (the "Escrow Agent") in an interest-bearing account.

## BEST INTEREST OF CREDITORS

J. Approval of the Purchase Agreement and the consummation of the Sale to the Purchaser at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

## GOOD FAITH

K. Subsequent to the entry of the Bidding Procedures Order, the Purchaser engaged in negotiations and discussions with myriad suppliers and creditors of the Debtors regarding assumption and assignment of Assumed Contracts and other economic aspects of each such party's relationship with the Debtors and the Purchaser, respectively. Certain of these discussions resulted in agreements between the Purchaser and various such parties regarding, among other things, Cure Costs related to Assumed Contracts and replacement contracts for executory contracts and unexpired leases that would not be assumed and assigned in connection with the Purchase Agreement. Specifically, the Purchaser reached agreement with two members of the Committee (as defined below) on the economic terms and conditions that would govern such parties' relationship with the Purchaser in the event that the Purchaser was the high bidder at the Auction and closed the Sale of the Purchased Assets.

L.    The Purchase Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Sellers and the Purchaser in good faith, without collusion and from arm's-length bargaining positions. The Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. Neither the Sellers nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or impose costs and damages under section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Bankruptcy Rules, or applicable law. Specifically, the Purchaser's discussions and negotiations with non-Debtor parties to executory contracts and unexpired leases of the Debtors and other creditors of the Debtors, including, without limitation, members of the Committee, were conducted in good faith, without collusion, from arm's length bargaining positions, and did not impair the ability of members of the Committee, the Debtors, or the Purchaser to fully and faithfully discharge their respective duties and obligations, if any, under the Bankruptcy Code.

### NOTICE OF THE MOTION, THE AUCTION AND THE CURE AMOUNTS

M.    As evidenced by the certificates of service (including, without limitation, docket numbers 68, 78, 116, 141, 190) filed with the Court: (1) proper, timely, adequate and sufficient notice of the Motion and the Sale Hearing has been provided by the Debtors; (2) such notice was good, sufficient and appropriate under the particular circumstances; and (3) no other or further notice of the Motion, the proposed Sale, the Bidding Procedures, the Auction or the Sale Hearing is or shall be required. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to:

(i)    proposed counsel to the creditors' committee appointed in the Chapter 11 Cases on September 4, 2009 (the "Committee");

(ii)     counsel to the DIP Secured Parties (as defined below);

(iii)     counsel to the Prepetition Agent (as defined below);

(iv)     counsel to the Subdebt Lenders (as defined below);

(v)     counsel to Purchaser;

(vi)     any party who recently expressed in writing to the Debtors an interest in the Purchased Assets;

(vii)     nondebtor parties to the Assumed Contracts[3];

(viii)     all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Purchased Assets;

(ix)     all applicable state and local taxing authorities;

(x)     the Office of the United States Trustee for the District of Delaware; and

(xi)     all entities that have requested notice in these chapter 11 cases under Bankruptcy Rule 2002.

N.     Additionally, as evidenced by docket number 133, the Debtors published notice of the Sale in the national edition of the *Wall Street Journal*.  With regard to parties who have claims against the Debtors, but whose identities are not reasonably ascertainable by the Debtors, the Court finds that such publication notice was sufficient and reasonably calculated under the circumstances to reach such parties.

O.     In accordance with the provisions of the Bidding Procedures Order, the Debtors have served notice of their intent to assume and assign the Assumed Contracts and of the related proposed Cure Costs (the "Contract & Cure Schedule") upon each nondebtor counterparty to the Assumed Contracts (other than non-Debtor parties to Additional Contracts added to the Contract & Cure Schedule, which parties have a right to sufficient notice under the Assumption and

---

[3] Assumed Contracts are defined as Assigned Contracts in the Purchase Agreement.  For purposes of this Order and the Purchase Agreement, the terms Assumed Contract and Assigned Contract are interchangeable.

Assignment Procedures).  The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the Assumed Contracts listed in the Contract & Cure Schedule and the assumption and assignment of the Assumed Contracts, other than as set forth in the Assumption and Assignment Procedures with respect to Additional Contracts.  All nondebtor parties to the Assumed Contracts identified in the Contract & Cure Schedule have had a reasonable opportunity to object to both the Cure Costs listed in the Contract & Cure Schedule and the assumption and assignment of the Assumed Contracts, except for parties to Additional Contracts, whose rights with respect to such contracts are specifically preserved and not impaired due to the operation of the Assumption & Assignment Procedures and the Bidding Procedures Order.

P.    The following Assignment Objections (the "Filed Assignment Objections") have been filed with respect to the Motion:

| Docket No. | Objecting Party or Parties |
| --- | --- |
| 149 | NL Ventures V Glendale, L.P. |
| 153 166 | Chrysler Group, LLP |
| 159 | US Bancorp Equipment Finance, Inc. |
| 161 | Honda Trading America Corporation |
| 164 | American Axle & Manufacturing, Inc. (and certain affiliates) |
| 165 | Plex Systems, Inc. |
| 167 | Magna Powertrain USA, Inc. and Magna Powertrain, Inc. |
| 169 | Macsteel Jackson, Macsteel Monroe and Gerdau Macsteel, Inc. |
| 170 | Spirit SPE Portfolio Holdings (and certain affiliates) |

## Section 363(f) Requirements Met For Free And Clear Sales

Q.     The Debtors may sell the Purchased Assets free and clear of all liens, claims, interests and encumbrances of any kind or nature whatsoever (collectively, "Claims") (except for any Assumed Liabilities), because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those holders of Claims who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Claims who did object to the Sale of the Purchased Assets free and clear of Claims fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Claims, if any, attach to the proceeds of the Sale ultimately attributable to the property against which they have a Claim, in the same order of priority and with the same validity, force and effect that such creditor had prior to the Sale, subject to any defenses of the Debtors.

R.     The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Purchased Assets were not free and clear of all Claims other than Permitted Encumbrances and Assumed Liabilities, or if the Purchaser would, or in the future could, be liable for any such Claims, including, as applicable, certain liabilities (collectively, the "Excluded Liabilities") that will not be assumed by the Purchaser, as described in Section 2.03(b) of the Purchase Agreement.

S.     Without limiting the generality of the foregoing, the Purchase Agreement provides the Debtors with reasonably equivalent value and fair consideration (as those terms are defined in the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the Bankruptcy Code), and was not entered into for the purpose of, nor does it have the effect of,

-8-

hindering, delaying or defrauding creditors of either of the Debtors under any applicable law. Except for the Assumed Liabilities, and the other obligations of the Purchaser specifically set forth in the Purchase Agreement or in connection with this or other orders of this Court (including the Creditor Settlement (as defined in the Final DIP Order)), the Sale and the transactions comprising the Sale shall not impose nor result in the imposition of any liability or responsibility on Purchaser or its affiliates, successors or assigns or any of their respective assets (including the Purchased Assets), and the transfer of the Purchased Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or any of their respective assets (including the Purchased Assets) to any liability for any Claims, including, without limitation, for any successor liability, other than as expressly identified as an Assumed Liability.

**ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS**

T. The assumption and assignment of the Assumed Contracts are integral to the Purchase Agreement, are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtors' sound business judgment.

U. With respect to each of the Assumed Contracts, the Debtors have met all requirements of section 365(b) of the Bankruptcy Code. Further, the Purchaser has provided all necessary adequate assurance of future performance under the Assumed Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code. Accordingly, the Assumed Contracts may be assumed by the Debtors and assigned to the Purchaser, as provided for in the Bidding Procedures Order, the Motion and the Purchase Agreement and upon such assumption and assignment, the Debtors can be relieved of liability from any future breach of the Assumed Contracts pursuant to section 365(k) of the Bankruptcy Code. Notwithstanding anything herein to the contrary, the foregoing findings shall only be applicable with respect to (1) Additional

Contracts and (2) the Assumed Contracts that are subject to the Filed Assignment Objections upon: (a) expiration of the Assignment Objection Deadline applicable to such agreements, and (b) resolution of any Assignment Objections filed with respect to such agreement in accordance with the Assumption & Assignment Procedures.

### VALIDITY OF THE TRANSFER

V.     As of the closing of the Sale (the "Closing"), the transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Purchaser with all right, title and interest in and to the Purchased Assets, free and clear of (1) all Claims other than Permitted Encumbrances and Assumed Liabilities and (2) all debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtors, claims (as defined in section 101(5) of the Bankruptcy Code), rights or causes of action (whether in law or in equity, including any rights or causes of action based on theories of transferee or successor liability under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), obligations, demands, guaranties, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise.

W.     The Debtors: (1) have full limited liability company power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action of the Debtors; (2) have all of the limited liability company power and authority necessary to consummate the transactions contemplated by the Purchase Agreement; (3) have taken all actions necessary to authorize and approve the Purchase Agreement and the consummation by the Debtors of the transactions

-10-

contemplated thereby; and (4) require no consents or approvals, other than those expressly provided for in the Purchase Agreement, to consummate such transactions.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### GENERAL PROVISIONS

1. The Motion is granted in full and the Sale is approved as set forth in this Sale Order.

2. The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All objections, if any, to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits, except as expressly provided herein, provided, however, that the foregoing sentence does not apply to the Filed Assignment Objections, which are preserved in their entirety solely with respect to the Cure Costs and assumption and assignment of the Assumed Contracts specifically identified therein.

### APPROVAL OF THE PURCHASE AGREEMENT

4. Subject to the provisions of this Sale Order (including paragraph 8 thereof), the Purchase Agreement, all transactions contemplated therein and all of the terms and conditions thereof are hereby approved.

-11-

5.     Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under and comply with the terms of the Purchase Agreement and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Sale Order.

6.     The Debtors, as well as their affiliates, officers, employees and agents, are authorized and directed to execute and deliver, and authorized to perform under, consummate and implement, the Purchase Agreement, in substantially the same form as the Purchase Agreement attached hereto as Exhibit 1, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may be: (a) reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession, the Purchased Assets; or (b) necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement, all without further order of the Court.

## TRANSFER OF PURCHASED ASSETS

7.     Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets in accordance with the terms of the Purchase Agreement.  The Purchased Assets shall be transferred to the Purchaser, and upon consummation of the Purchase Agreement, such transfer shall: (a) be valid, legal, binding and effective; (b) vest the Purchaser with all right, title and interest in the Purchased Assets; and (c) be free and clear of all Claims (including, without limitation, any claims arising under the Sale Agreement (as that term is defined in the pleading found at docket number 164)) except for Permitted Encumbrances and Assumed Liabilities with all Claims to attach to the net proceeds of the Sale, in the order of their priority and with the same validity, force and effect which they now

-12-

have against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

8.      At the Closing, the Liens in favor of or for the benefit of the Prepetition Lenders, the Prepetition Agent, the DIP Secured Parties and the Subdebt Lenders on the Purchased Assets shall attach to the proceeds of the sale of the Purchased Assets in the same relative order of priority; and the proceeds from the sale of the Purchased Assets attributable to the Prepetition Collateral and the DIP Collateral shall be paid in accordance with the provisions of the Court's Final Order Approving Debtor in Possession Credit and Guaranty Agreement (Docket #140, the "Final DIP Order"). For purposes of this Order, the terms Prepetition Lenders, Prepetition Agent, DIP Secured Parties, Subdebt Lenders, Prepetition Collateral and DIP Collateral shall have the meanings ascribed thereto in the Final DIP Order. In addition, upon the Committee waiving its right to assert a Challenge (as defined in the Final DIP Order), whether by affirmative written waiver of such right or by expiration of the Challenge period established in the Final DIP Order and no Challenge having been asserted, HHI Funding, LLC, in its capacity as DIP Lender and Prepetition Lender, shall fund, as a carve-out of its collateral and in connection with the Creditor Settlement (as defined in the Final DIP Order) $1.025 million (the "Creditors' Fund") into a segregated held by the Debtors, and said funds shall not be transferred, used or withdrawn without further order of this Court, provided, however, that if the Committee asserts any Challenge it shall forever forfeit its right to the Creditors' Fund, irrespective of whether such Challenge is ultimately successful or unsuccessful. Subject to applicable law, the Creditors' Fund is intended by Purchaser, the Debtors and the Committee to be for the sole benefit of general unsecured creditors pursuant to the terms of the Creditor Settlement and shall not be available for claims of DIP Lenders, Prepetition Lenders, or Subdebt Lenders. The rights

-13-

of any party in interest to argue that the Creditors' Fund is estate property are not affected by the Creditor Settlement, the Final DIP Order or this Sale Order and are preserved, as are the rights of the Purchaser, the Debtors and the Committee to argue that the Creditors' Fund is property of general unsecured creditors. The Court has not determined whether the Creditors' Fund is property of the Debtors' estates or the property of general unsecured creditors to date and makes no ruling on that issue under this Sale Order, said issue being subject to further notice and a hearing. Also at the Closing, the Escrow Account (as defined in the Final DIP Order) and the Winddown Budget shall be funded as provided for in the Final DIP Order.

9. Except as otherwise provided in the Purchase Agreement, ~~AAM (as that term is defined in the pleading at docket number 164) and~~ all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding claims (as defined in section 101(5) of the Bankruptcy Code), except for Permitted Encumbrances and Assumed Liabilities, arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to Closing, or the transfer of the Purchased Assets to the Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting such claims against the Purchaser, its successors or assigns, its property or the Purchased Assets. No such persons or entities shall assert against the Purchaser or their successors in interest any such claim arising from, related to or in connection with the ownership or operation of the Purchased Assets prior to the Closing, except for Permitted Encumbrances and Assumed Liabilities.

10. This Sale Order (a) shall be effective as a determination that, as of Closing, all Claims other than Permitted Encumbrances and Assumed Liabilities relating to the Purchased

-14-

Assets have been unconditionally released, discharged and terminated as to the Purchased Assets, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

11. If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Claims against or in the Debtors or the Purchased Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtors or the Purchased Assets or otherwise, then only with regard to Purchased Assets that are purchased by the Purchaser pursuant to the Purchase Agreement and this Sale Order (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims against the Purchased Assets other than the

-15-

Assumed Liabilities. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

12. All persons or entities in possession of some or all of the Purchased Assets are directed to surrender possession of such assets to the Purchaser or its designee at the time of Closing of the Sale.

13. Following the Closing of the Sale, no holder of any Claim shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to any such Claim or based on any actions the Debtors may take in their chapter 11 cases.

14. All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchaser in accordance with the Purchase Agreement and this Sale Order.

### ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS

15. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors' assumption and assignment to the Purchaser of the Assumed Contracts identified on <u>Exhibit 2</u> to this Order and is hereby approved, and all requirements of section 365 of the Bankruptcy Code are hereby determined to have been satisfied with respect to such Assumed Contracts. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall not be liable for any breach of the Assumed Contracts after the date of assignment to the Purchaser.

16. Subject to (a) the filing of an Assignment Objection (in accordance with the Assumption and Assignment Procedures) with respect to an Assumed Contract that is sustained by this Court and not successfully appealed with respect to such an Assumed Contract or (b) a written stipulation between the Purchaser and the non-Debtor party to such contract (in either case, a "Sustained Assignment Objection"), pursuant to sections 105(a) and 365 of the

-16-

Bankruptcy Code, the Debtors' assumption and assignment to the Purchaser of each Assumed Contract that is an Additional Contract is approved and all requirements of section 365 of the Bankruptcy Code are determined to have been satisfied with respect to such Assumed Contracts.

17.     The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Contracts to the Purchaser free and clear of all Claims, and to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser, provided, however, that the foregoing remains subject to the ability of counterparties to Additional Contracts to file and prosecute Assignment Objections in accordance with the Assumption and Assignment Procedures.

18.     The Assumed Contracts transferred in accordance with this Order and the Assumption and Assignment Procedures shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtors as a result of the assumption or assignment of the Assumed Contracts. No Assumed Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the transactions contemplated by the Purchase Agreement.

19.     The Cure Costs identified on Exhibit 2 hereto arising under the Assumed Contracts identified on Exhibit 2 hereto shall be paid by the Purchaser at the Closing of the Sale, subject to the terms of the Purchase Agreement.

20.     The Cure Costs arising under an Assumed Contract that is an Additional Contract shall be paid by the Purchaser no later than 31 days after the Closing of the Sale, subject to the terms of the Purchase Agreement, in an amount either: (a) set forth on the amended and/or supplemented Contract and Cure Schedule referencing such contract or lease, (b) if an Assignment Objection is filed with respect to such contract or lease, (i) determined by the Court in connection with a Sustained Assignment Objection or (ii) agreed upon between the Purchaser and the non-Debtor counterparty to such contract or lease; or (c) as otherwise agreed upon by the Purchaser and the non-Debtor counterparty to such contract or lease.

21.     Payment of the Cure Costs shall be a full satisfaction of any and all defaults under the Assumed Contracts, whether monetary or non-monetary. Each pre-Closing (as such term is defined in the Purchase Agreement) nondebtor party to an Assumed Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Debtors or the Purchaser, their successors or assigns or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing, provided, however, that the foregoing shall in no way prejudice the right of a non-Debtor counterparty to an Additional Contract to raise and prosecute an Assignment Objection in the manner set forth in the Assumption and Assignment Procedures.

22.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

23.     Upon the Closing of the Sale, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts, provided, however,

that paragraphs 15 through 23 of this Sale Order shall only be applicable with respect to Additional Contracts upon: (a) if no Assignment Objection is timely filed with respect to any such Additional Contract, expiration of the Assignment Objection Deadline applicable to such agreements, and (b) if an Assignment Objection is timely filed with respect to any such Additional Contract, the withdrawal or other resolution in favor of the Debtors or Purchaser of such Assignment Objection filed with respect to such agreement in accordance with the Assumption & Assignment Procedures.

24. At the omnibus hearing scheduled to take place on October 14, 2009 at 11:30 a.m., the Court shall hear all Assignment Objections outstanding and unresolved as of such date and time, including, if unresolved at that time, the Filed Assignment Objections.

25. The Purchaser shall satisfy administrative expenses arising under executory contracts or unexpired leases that are identified on a Contract & Cure Schedule but ultimately not assigned to the Purchaser, provided, however, that the Purchaser shall pay such expenses only to the extent that they are incurred: (a) from the Petition Date through either (i) the date that is one business day after the Purchaser files an amended Contract and Cure Schedule removing such contract from such schedule or (ii) the date on which the Court enters an order sustaining an Assignment Objection finding that such contract or lease cannot be assigned to Purchaser under section 365 of the Bankruptcy Code; (b) with the advance and continuing knowledge of the Purchaser; and (c) in the ordinary course of the Debtors' operations.

## ADDITIONAL PROVISIONS

26. Except as expressly set forth in the Purchase Agreement, the Purchaser and its successors or assigns shall have no liability for any liability, claim (as that term is defined in section 101(5) of the Bankruptcy Code), damages or other obligation of or against the Debtors related to the Purchased Assets by reason of the transfer of the Purchased Assets to the

-19-

*Notwithstanding other provisions in this Order to the contrary, except as otherwise may be determined by a Court of competent jurisdiction, and solely with respect to the claims or actions brought by ~~American Axle~~ AAM with respect to any claim or right under a*

Purchaser. The Purchaser shall not be deemed, as a result of any action taken in connection with *non-competition agreement between the Debtors and AAM American Axle*

the purchase of the Purchased Assets, to: (a) be a legal successor, or otherwise be deemed a

successor to the Debtors (other than with respect to any obligations arising under the Assumed

Contracts from and after the Closing); (b) have, *de facto* or otherwise, merged with or into the

Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise

of the Debtors.

27.     The Purchase Agreement, as amended, provides for the Purchaser to acquire at

Closing and waive and release claims against non-insider trade creditors of the Debtors arising

under section 547 of the Bankruptcy Code and claims related to the October 4, 2006,

subordinated secured notes held by the Subdebt Lenders. This Order specifically approves the

Purchase Agreement in that respect and constitutes approval of the release and waiver of such

claims. For avoidance of doubt, the Purchaser is not acquiring other claims or causes of action

that are not ordinary business claims, such as (but not limited to) all other avoidance actions,

state fraudulent conveyance actions, claims against insiders for breach of fiduciary duties,

claims, if any, against the Subdebt Lenders other than claims related to the October 4, 2006

subordinated secured notes, or similar tort claims.

28.     While the Debtors' bankruptcy cases are pending, this Court shall retain

jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of

this Sale Order and the Purchase Agreement, all amendments thereto, any waivers and consents

thereunder (and of each of the agreements executed in connection therewith in all respects) and

to adjudicate disputes arising under or related to this Sale Order or the Purchase Agreement.

29.     Nothing in this Sale Order or the Purchase Agreement releases, nullifies or

enjoins the enforcement of any liability to a governmental unit under environmental statutes or

regulations (or any associated liabilities for penalties, damages, cost recovery or injunctive relief) that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order. Notwithstanding the foregoing sentence, nothing in this Sale Order shall be interpreted to deem the Purchaser as the successor to the Debtors under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to entry of this Sale Order or for liabilities relating to off-site disposal of wastes by the Debtors prior to entry of this Sale Order.

30.     No bulk sales law, or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Purchase Agreement, the Motion and this Sale Order.

31.     The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein of the Sale shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

32.     The terms and provisions of the Purchase Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates and their creditors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including all persons asserting Claims in the Purchased Assets to be sold to the Purchaser pursuant to the Purchase Agreement, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee, examiner or receiver

-21-

and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders or any trustee, examiner or receiver.

33.     The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

34.     The Purchase Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Purchase Agreement.

35.     In the event that there is a direct conflict between the terms of this Sale Order and the Purchase Agreement, the terms of this Sale Order shall control.

36.     Each and every federal, state and local governmental agency, department or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

37.     Nothing in this Sale Order effects a sale of (a) tooling, fixtures and gauges or (b) inventory, including steel provided to the Debtors under the Bailment Agreements dated on or about February 9, 2009 and February 12, 2009, in the case of (a) and (b) used in the manufacture of component parts for Chrysler Group LLC, ~~Ford Motor Company~~ Magna Powertrain, Inc., or Magna Powertrain USA, Inc., to the extent that such agreements are valid and enforceable.

38.     As provided by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Sale Order shall not be stayed for 10 days after the entry of the Sale Order and

shall be effective immediately upon entry, and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Sale Order.

Dated: Wilmington, Delaware
     Oct. 1 , 2009

                             UNITED STATES BANKRUPTCY JUDGE

CURRENT 15560345v5